511 P.2d 621

**The STATE of Arizona, Appellee,**

v.

**Arnulfo Montiel CORDOVA, Appellant.**

No. 2532.

Supreme Court of the State of Arizona, In Banc.

June 28, 1973.

Rehearing Denied Sept. 18, 1973.

Gary K. Nelson, Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Phoenix, and James P. F. Egbert, Third Year Law Student, University of Arizona, Tucson, for appellee.

Edward P. Bolding, Pima County Public Defender by John G. Hawkins, Deputy Public Defender, Tucson, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment by the court sitting without a jury finding the defendant guilty of three counts of unlawful sale of narcotics, § 36–1002.02 A.R.S., and a sentence of not less than five nor more than eight years as to each count with the sentences to be served consecutively.

We are asked two questions on appeal:

1. Was the grand jury which indicted the defendant unconstitutionally drawn because of the exclusion from membership of those who could not read and write the English language?

2. Was the evidence sufficient to support conviction with regard to the second sale?

The facts necessary for a determination of this matter on appeal are as follows. The defendant was indicted on 13 July 1971 on three counts of unlawful sale of narcotics (heroin). After numerous pretrial motions and hearings, and a notice of alibi as to Count II, defendant was tried before the court without a jury and found guilty on all three counts.

The evidence indicates that on the 28th of May, 1971, a detective for the Tucson Police Department purchased from the defendant two "papers" of heroin. This is the basis for Count I. On 3 June 1971, the same detective made a second purchase at the same address from the defendant. This is the basis for Count II. And finally, on 9 June 1971, the same detective made a third purchase of one "paper" of heroin.

A chemist for the Tucson City-County Crime Laboratory testified that all four papers contained useable amounts of heroin.

Concerning Count II the police officer testified:

"Q Did you have occasion to return to that address?

"A Yes, I did.

"Q When is the next time that you returned?

"A The next time was in the month of June.

"Q Directing your attention to the 3rd of June, did you return to that address?

"A I did, sir.

"Q Do you recall approximately what time it was then?

"A I returned this time at approximately 7:00 p.m. in the evening.

"Q Who was with you?

"A Mr. Lawson was with me again.

"Q Tell us what happened at that time?

"A Yes, we drove up and Mr. Cordova was outside in the area of his pickup, kept talking to him in reference to the pickup, GMC, had chrome wheels and so forth. We talked about it, talked about some horses. He told me he did have some horses. I then asked him if he had any more stuff and he said, 'Yes.'

"Q All right, what happened at that time?

"A He asked me how many I wanted and I told him one.

"Q What happened next?

"A I gave him a $20 bill and he went in; he handed me one small piece of paper and $10 change.

"Q Then what did you do?

"A I took this, put it in the front right pocket of my levis and we cleared the area, made a police report. I also marked and tagged this item and placed in the lock box of police property.

"Q Do you see that person here today? Is he the same person you just identified?

"A Same gentleman I just identified."

As the alibi defense, the defendant called four witnesses who testified the defendant was out of town on 3 June, was in fact in Hermosillo, Sonora, Mexico, the night of 3 June. A receipt from the hotel in Hermosillo was introduced and the defendant took the stand to substantiate the alibi defense. He denied making the other two sales as well.

## WAS THE GRAND JURY UNCONSTITUTIONALLY DRAWN?

At the time the defendant was indicted by the grand jury, our statute read: "Every juror, grand and trial, shall be an elector in the county." § 21–201 A.R.S. To be an elector at the time the grand jury returned the indictment against the defendant, a person had to be able to read and write the English language. § 16–101,

subsec. A, par. 4 A.R.S., as amended, effective 4 November 1970.

We have held that the denial of a challenge to a jury will not be considered unless the defendant can show prejudice. State v. Narten, 99 Ariz. 116, 407 P.2d 81 (1965), cert. den. 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966); State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962); State v. Mahoney, 106 Ariz. 297, 475 P.2d 479 (1970); State v. Mojarro Padilla, 107 Ariz. 134, 483 P.2d 549 (1971); cert. den. 404 U.S. 1049, 92 S.Ct. 718, 30 L.Ed.2d 740 (1972).

The defendant in his brief states that he is a Mexican-American and "there is no better example of 'systematic jury discrimination which excluded from the jury defendant's peers and equals of the community' than the application of the English literacy requirement for voter registration * * *." We do not agree. Even if the literacy requirement for voting in effect at the time the grand jury was selected was unconstitutional as a requirement for voting, see Oregon v. Mitchell, United States v. Arizona, United States v. Idaho, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), the elector who does not read and write English could still be constitutionally barred from service in the grand or petit jury. English is the language of the courts in Arizona. It is the language in which the court's business is transacted and it is imperative that those who participate in the State's judicial system have a working knowledge of the English language. It would be an undue burden upon the State court system to have to translate for non-English speaking or reading jurors the proceedings conducted and the written exhibits presented either before the grand jury or in the court of law itself. We agree with the Supreme Court of Louisiana:

"We see no constitutional infirmity in * * * disqualifying jurors who are unable to read and write the English language. The ability to read and write the English language has a vital relation to the performance of the duties of a Grand Juror. It applies to all candidates for Grand Jury service, irrespective of race, color, or creed. The provision denies no rights secured by the United States Constitution." State v. Woodfork, 255 La. 611, 615, 232 S.2d 290, 291 (1970).

## DOES THE EVIDENCE SUPPORT THE CONVICTION?

Defendant also contends that there was insufficient evidence to support his conviction for the second sale. Defendant raised an alibi as to this sale and it was evidently not believed by the court. We have read the transcript and we believe that the evidence supports the finding of the trial court.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.