770 P.2d 356

**STATE of Arizona, Appellee,**

v.

**Mark Tanner MARCHAM, Appellant.**

**No. 1 CA–CR 11511.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 13, 1988.

Reconsideration Denied Sept. 13, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div. and William D. Hostetler, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

OPINION

SHELLEY, Judge.

Mark Tanner Marcham (defendant) was charged with aggravated assault, a dangerous class 3 felony. Following his conviction after a jury trial, he admitted two prior felony convictions and was later sentenced to the presumptive prison term of 11.25 years.

The charges in this case arose out of a traffic altercation. The defendant apparently threw a cigarette onto the victim's vehicle. When the victim threw the cigarette back at the defendant, defendant pointed a handgun at the victim. The defendant was later apprehended and arrested by the police.

One of the jurors, Ms. Ford, was deaf. She required the assistance of a sign language interpreter to understand both the proceedings in court and during jury deliberations. The defendant's trial counsel voiced no objections to this juror at trial. His trial counsel withdrew after the notice of appeal was filed. Mr. Williams represented defendant on appeal.

The only issue raised on appeal is whether the court committed fundamental error in permitting a deaf person to remain on the jury.

The record indicates that the juror was deaf. There is nothing in the record stating that the juror was also mute. The record is therefore unclear as to whether the juror could speak.

Defendant argues that the juror was unqualified to sit because "sign language" is a wholly separate language from English and, therefore, she was not communicating in the same language as the other people in the courtroom. He suggests that there is no way to determine how the English words used in the courtroom were translated into sign language. In support of this argument, appellant refers to a text, *American Sign Language, Linguistic and Applied Dimensions* (2d ed., Little, Brown and Company, Boston 1987), which observed that American Sign Language (ASL) was the native language of many deaf people who had deaf parents, and that it differed from other languages in the sense that it was primarily manual/visual rather than oral/auditory. That text also noted that ASL was not derived from any spoken language. The fact that the record indicates that a sign language interpreter was used does not imply that the interpreter used ASL. Furthermore, the record does not indicate that Juror Ford's parents were deaf. Therefore we cannot assume that the interpreter used ASL.

Defendant further argues that an interpreter was interjected between the witnesses and the juror; that the interpreter for the juror necessarily resulted in the presence of an unauthorized person during deliberations; and finally, that the record does not show that the translator was sworn or instructed in any way as to her duties during the trial or deliberations.

We note that following the court's general questioning of the panel, counsel requested that four of the jurors be questioned further outside the presence of the rest of the panel. There was no objection to juror Ford or any request to discuss her ability to understand the proceedings. We note that there was a lengthy colloquy between the court and Ms. Ford regarding her prior jury service. She indicated she served as a juror on two cases three years earlier in Oregon. The judge asked her during the general voir dire of the panel:

THE COURT: [D]oes your handicap in any way hinder your ability to participate and to understand the witnesses and participate as a juror?

MS. FORD: If you would have the interpreter stand behind the witness.

THE COURT: So with that, you would have no problem with being seated as a juror; is that correct?

MS. FORD: I can be seated as a juror, yes.

The transcript of the voir dire proceedings indicates that all proceedings were conducted through "an official sign language translator" for juror Ford.

Whether a person is qualified to act as an interpreter is a matter resting within the sound discretion of the trial judge. *State v. Burris*, 131 Ariz. 563, 643 P.2d 8 (App.1982). The competency of an interpreter appointed by the court should be determined prior to the time translating duties commence. The interpreter's qualifications are subject to inquiry by any party against whom the evidence is going to be used. *Burris*, 131 Ariz. at 569, 643 P.2d at 14. Furthermore, there is a presumption that court interpreters will do their duty and that an oath will be properly administered. *State v. Navarro*, 132 Ariz. 340, 645 P.2d 1254 (1982). In the absence of an objection to the imposition of the oath, the presumption of regularity is an adequate answer to the raising of such an objection for the first time on appeal. *Navarro*, 132 Ariz. at 342, 645 P.2d at 1256. Furthermore, as noted in *Navarro*, the irregularity in the swearing of a witness is waived because the alleged error can be easily cured if the objection is raised in a timely manner. We find that reasoning compelling in the circumstances of this case where the record indicates that an "official court interpreter" was present in court and assisted the juror in these proceedings.

As noted above, the grounds to believe the juror might have been disqualified from serving were known to counsel prior to passing the panel. In fact, defense counsel passed the panel on two separate occasions. At the time he passed the panel, it was obvious that an interpreter would have to be in the jury room to interpret the discussion for the deaf juror. Furthermore, no objections to the interpreter being in the jury room were made at any time at the trial level. As noted in Rule 18.4(b), Arizona Rules of Criminal Procedure:

> When there is reasonable ground to believe that a juror cannot render a fair and impartial verdict, the court, on its own initiative, or on motion of any party, shall excuse him from service in the case. A challenge for cause may be made at any time, but may be denied for failure of the party making it to exercise due diligence.

It has been recognized that an attorney may lose the right to object to a juror sitting on the panel when counsel failed to exercise proper diligence during the voir dire examination. When counsel should have known that a juror was deaf or had hearing problems, he may lose his right to object by waiting until after the verdict. *See* Annot., *Deafness of Juror as Ground for Impeaching Verdict, or Securing New Trial or Reversal on Appeal*, 38 A.L.R.4th 1170 (1985).

In *People v. Guzman*, 125 Misc.2d 457, 478 N.Y.S.2d 455 (1984), the defendant argued his right to a fair trial under the Sixth Amendment was denied when a deaf person, assisted by a sign language translator, was seated as a juror. The court noted that a number of states amended their juror qualification statutes to prohibit the exclusion of the sensorially impaired from the jury pool. *Guzman*, 125 Misc.2d at 457–58, 478 N.Y.S.2d at 457. The court also noted that the defendant assumed the deaf person was unable to speak English because a sign language translator assisted the juror at trial. It noted that the translator in that case was a signer who communicated through signed English—where the exact words in English are transmitted from the speaker through the signer to the listener. The signer did not use ASL, which requires translating or interpreting. *Guzman*, 125 Misc.2d at 458–59, 478 N.Y. S.2d at 457. The court observed, "There is certainly no question that deaf persons are as capable as anyone else of understanding legal jargon or any other technical jargon used by expert witnesses. The deaf are found in many highly technical professions, including medicine, engineering, and the law." 125 Misc.2d at 462, 478 N.Y.S.2d at 460.

*Guzman* rejected the defendant's arguments that interpreting for a deaf person created a likelihood of inaccuracy in translation, that there were subtle nuances of voice that could not be projected through a signer, that the sanctity of jury deliberations was invaded because a communications facilitator was present in addition to the jury members and that the presence of a signer was disruptive at trial. The court concluded, "The blunt constraint that no deaf person can be qualified to sit as a juror is a passe conclusion which defies and has no connection with reality or common sense." *Guzman*, 125 Misc.2d at 463, 478 N.Y.S.2d at 460. *See also*, Comment, *Due Process: The Deaf and the Blind as Jurors*, 17 New England L.Rev. 119 (1981).

Defendant cites *State v. Cordova*, 109 Ariz. 439, 511 P.2d 621 (1973), as authority for the proposition that a juror who requires a translator is not a qualified juror. This is incorrect. At the time *Cordova* was decided, A.R.S. § 21–201 provided that "every juror, grand and trial, shall be an elector in the county." That section has not been amended. Section 16–101(A)(4), which was in effect at the time that the grand jury returned the indictment, provided that to be an elector, a person had to be able to read and write the English language. The statute was challenged as being unconstitutional. The Arizona Supreme Court held that the statute was constitutional and stated:

> English is the language of the courts in Arizona. It is the language in which the court's business is transacted and it is imperative that those who participate in the State's judicial system have a working knowledge of the English language. It would be an undue burden upon the

State court system to have to translate for non-English speaking or reading jurors the proceedings conducted and the written exhibits presented either before the grand jury or in the court of law itself.

*Cordova,* 109 Ariz. at 441, 511 P.2d at 623.

Since then, A.R.S. § 16–101 has been amended to delete the requirement that an elector must read and write the English language. Thus, the case is not authority for exclusion of the juror in question.

■ Given the expressed legislative intent in this state to eliminate discrimination based on handicaps, including deafness, through community efforts contained at A.R.S. § 41–1402(A)(6) and (7), it would be anomalous for this court to reverse defendant's conviction because a deaf person who utilized an interpreter at trial was seated on a jury. Under the facts in this case, where the defendant failed to raise any objection to the juror's possible disqualifications, we find that he has waived the right to raise this issue for the first time on appeal. *Cf. State v. Bravo,* 131 Ariz. 168, 639 P.2d 358 (App.1981) (even though the answers of a venireman demonstrate that he cannot be fair and impartial, a challenge to that juror may be waived).

■ The trial court's failure to *sua sponte* disqualify a deaf juror assisted by a translator, when there was no evidence in the record to suggest that the juror was unable to understand the proceedings, did not constitute fundamental error. Furthermore, in the absence of any evidence to the contrary, a presumption of regularity exists with respect to the oath of the interpreter and her proper interpretation of the proceedings in the trial court.

The judgment and sentence are affirmed.

CORCORAN, P.J., and FROEB, J., concur.