851 P.2d 855

The STATE of Arizona, Appellant,

v.

Joaquin Coronado CORDERO and Jose Antonio Lara–Aguilar, Appellees.

The STATE of Arizona, Appellee,

v.

Jose Antonio LARA–AGUILAR and Eduardo Segura Contreras, Appellants.

Nos. 2 CA–CR 92–0227, 2 CA–CR 92–0315, 2 CA–CR 92–0317.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 30, 1992.

Review Denied June 2, 1993.

Jose Luis Machado, Santa Cruz Co. Atty. by Enrique R. Gonzales, Nogales, for appellant State of Arizona.

Wayne Cypert, Nogales, for appellee Joaquin Coronado Cordero.

William Rothstein, Nogales, for appellee/appellant Jose Antonio Lara–Aguilar.

Grant Woods, Atty. Gen. by Paul J. McMurdie and R. Wayne Ford, Phoenix, for appellee State of Arizona.

Muriel Smith–Florez, Nogales, for appellant Eduardo Segura Contreras.

## OPINION

HATHAWAY, Judge.

Joaquin Coronado Cordero and Jose Antonio Lara–Aguilar were charged with two counts of endangerment, one count each of unlawful flight, burglary, theft, conspiracy to commit theft, and criminal damage after Eduardo Segura Contreras, the driver of a vehicle the defendants had stolen, nearly hit a small child and a woman during the course of the defendants' flight from law enforcement officers. Cordero and Lara–Aguilar challenged the justice court's order binding them over to superior court and moved for a new finding of probable cause and for dismissal, claiming that there was insufficient evidence to support the charges of endangerment and unlawful flight. The trial court remanded the matter to the justice court with instructions to dismiss those counts against Cordero and Lara–Aguilar, reasoning that *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), is not the law in this state with respect to substantive crimes committed by co-conspirators. The state appealed from that order and filed a petition for special action relief. This court declined to accept jurisdiction of the special action.[1] Lara–Aguilar appeals from his conviction by a jury on the remaining charges and Contreras joins in that appeal with respect to his convictions on all charges.

## THE STATE'S APPEAL

**1. The *Pinkerton* Doctrine.**

In *Pinkerton, supra,* the Supreme Court held that if a jury finds a defendant guilty of conspiracy, it may also find the defendant criminally liable for substantive offenses committed by his co-conspirators acting within the scope and in furtherance of the conspiracy. The defendant is not culpable however, if "the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." 328 U.S. at 647, 648, 66 S.Ct. at 1184, 90 L.Ed. at 1497. In dismissing the endangerment and unlawful flight charges against Cordero and Lara–Aguilar, the trial court ruled that the *Pinkerton* doctrine does not apply in Arizona to impose liability for crimes committed by co-conspirators and that the applicable statute, A.R.S. § 13–1003, limits a defendant's culpability to his participation in the underlying conspiracy. The only statutes creating vicarious criminal liability are A.R.S. §§ 13–301 through 13–303, relating to accomplice liability, which the court specifically found was not supported by the evidence presented at the preliminary hearing.

The state contends that the *Pinkerton* doctrine of vicarious criminal liability is applicable and that the endangerment and unlawful flight offenses were reasonably foreseeable crimes which could be expected to occur during the course of the conspiracy to steal the car in Tucson and drive it to Mexico. In support of its position, the state cites Recommended Arizona Jury Instruction (Criminal) 10.035, an instruction that has been approved by Division One of this court and interpreted as imposing vicarious liability under the *Pinkerton* doctrine. *State ex rel. Woods v. Superior Court*, 169 Ariz. 552, 821 P.2d 213 (App. 1991), *review granted* Jan. 7, 1992. The instruction provides that "[a] conspirator is liable for all criminal acts committed by a co-conspirator during and in furtherance of the conspiracy."

---

1. We construe the superior court's order directing the justice court to dismiss the charges as tantamount to an order of dismissal from which the state may appeal. A.R.S. § 13–4032(1).

In *State v. Superior Court, supra,* Division One concluded that the *Pinkerton* doctrine remains viable in Arizona despite the revision of the criminal code in 1978 abolishing all common law offenses. *See* A.R.S. § 13–103. The court offered as support for its conclusion the language of A.R.S. § 13–1003 and its legislative history. The court first refers to the following language from § 13–1003:

A. A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense....

B. If a person guilty of conspiracy, as defined in subsection A of this section, knows or has reason to know that a person with whom such person conspires to commit an offense has conspired with another person or persons to commit the same offense, such person is guilty of conspiring to commit the offense with such other person or persons, whether or not such person knows their identity.

While Division One correctly notes that these subsections extend liability to a conspirator who plans but has not performed the substantive criminal conduct, there is nothing in the conspiracy statute imposing liability for anything but the crime of conspiracy. Likewise, the legislative history cited by Division One focuses exclusively on the scope of the conspiracy and provides no support for the imposition of liability for substantive offenses committed during the course of the conspiracy. Neither the express statutory language nor its history supports the court's conclusion that it is "unnecessary to show evidence that a conspiracy defendant personally participated in the criminal conduct alleged...." 169 Ariz. at 555, 821 P.2d at 216.

Nor do we find persuasive Division One's reference to RAJI 10.035. That instruction is based on *State v. Garcia,* 117 Ariz. 67, 570 P.2d 1080 (App.1977), a case decided prior to the abolition of common law offenses. As noted above, subsequent to the 1978 revisions, the only criminal offenses recognized in Arizona are those specified by statute. Because the conspiracy statute simply does not address substantive crimes committed during the course or in furtherance of a conspiracy, we conclude that the *Pinkerton* doctrine is no longer viable in Arizona.

**2. Accomplice Liability.**

■ Although the state's primary argument on appeal concerns the continued vitality of the *Pinkerton* doctrine, the state also argues generally that there was sufficient evidence presented at the preliminary hearing to support the charges as alleged. The charges included an allegation that the co-defendant passengers were culpable under A.R.S. § 13–303 as accomplices. The accomplice statutes provide, in pertinent part, as follows:

A.R.S. § 13–301. Definition.

In this title, unless the context otherwise requires, "accomplice" means a person ... who with the intent to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13–302. Criminal liability based upon conduct.

A person may be guilty of an offense committed by such person's own conduct or by the conduct of another for which such person is criminally accountable as provided in this chapter, or both....

A.R.S. § 13–303. Criminal liability based upon conduct of another.

A. A person is criminally accountable for the conduct of another if:

1. The person is made accountable for such conduct by the statute defining the offense; or

2. Acting with the culpable mental state sufficient for the commission of the offense, such person causes another person, whether or not such other person is

capable of forming the culpable mental state, to engage in such conduct; or

3. The person is an accomplice of such other person in the commission of an offense.

B. If causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense if:

1. The person solicits or commands another person to engage in the conduct causing such result; or

2. The person aids, counsels, agrees to aid or attempts to aid another person in planning or engaging in the conduct causing such result.

(emphasis added).

When read together, §§ 13–301 and 13–303 require that, for criminal liability to attach, an accomplice must knowingly and with criminal intent participate, associate or concur with another in the commission of a crime. Accomplice liability attaches to "all persons who participate in the commission of a crime, whether ... as principals, aiders and abettors, or accessories before the fact." *State v. McNair*, 141 Ariz. 475, 480, 687 P.2d 1230, 1235 (1984), citing *Levering v. Commonwealth*, 132 Ky. 666, 677, 117 S.W. 253, 257 (1909).

In *State v. Marchesano*, 162 Ariz. 308, 783 P.2d 247 (App.1989), Division One of this court addressed the question of whether, based on accomplice liability, there was sufficient evidence to sustain a jury's conviction of the defendant for attempted first-degree murder of a restaurant owner shot while the defendant and his companion robbed him. In affirming that conviction and rejecting the defendant's contention that no evidence showed he had the necessary culpable mental state to support the conviction, the court reasoned that "[a]c-complice liability is based on the proposition that one is criminally responsible 'for everything done by his confederate which was a probable and natural consequence of their common plan.'" 162 Ariz. at 314, 783 P.2d at 253, quoting *Karlos v. State*, 476 N.E.2d 819, 822 (Ind.1985). The court also cited two California cases, *People v. Hammond*, 181 Cal.App.3d 463, 226 Cal.Rptr. 475 (1986), and *People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984). In the latter case the court found that the liability of an accomplice "extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." *Id.* at 560, 199 Cal.Rptr. at 68, 674 P.2d at 1326.[2] Thus, the *Marchesano* court concluded that the evidence supported the inference that the defendant was a willing participant in the robbery and "whatever was necessary to complete the robbery and the escape.... [The] defendant accepted the risk that his accomplice would deliberately shoot to kill during the robbery or the escape." 162 Ariz. at 315, 783 P.2d at 254. The court found the attempted murder to be a "readily foreseeable incident of their flight from the scene of an armed crime." *Id.*

With these principles in mind, we consider the evidence presented at the preliminary hearing. A highway patrolman testified that he followed the southbound vehicle on the interstate. He identified Contreras as the driver, Cordero as the front seat passenger, and Lara–Aguilar as the passenger seated behind Cordero. The driver was speeding and the officer activated his emergency lights. When the driver would not stop, the patrolman turned on his siren. The driver exited the freeway at Tubac and the officer saw all three occupants turn around and look at him. The car traveled down a ramp, turned left, and failed to stop at a stop sign. The vehicle continued, almost hit a woman and her

---

**2.** We note that the *Marchesano* court also cites a number of Arizona cases in support of the principle of accomplice liability which we believe, while persuasive, are not precisely on point. *State v. Tison*, 129 Ariz. 546, 633 P.2d 355 (1981) (involved principal liability under prior criminal code provision A.R.S. § 13–139 and in any event the court found there was sufficient evidence of defendant's participation in the offenses); *State v. Collins*, 111 Ariz. 303, 528 P.2d 829 (1974) (involved prosecution for felony murder under A.R.S. § 13–451); *State v. Doty*, 110 Ariz. 348, 519 P.2d 47 (1974) (involved application of A.R.S. § 13–319); *State v. Weis*, 92 Ariz. 254, 375 P.2d 735 (1962) (involved application of former A.R.S. § 13–139).

small child who were crossing the road, came around a curb, went up an embankment and stopped. All three occupants left the vehicle and began to run down a canyon. Another officer at the scene caught the driver, and the testifying patrolman caught Lara–Aguilar. Cordero was apprehended almost eight hours later. The patrolman stated that the steering column had been broken and it was determined soon thereafter that the vehicle was stolen. Both Lara–Aguilar and Contreras made statements regarding where they had obtained the car but claimed Cordero "put them up it." There was also testimony that the three had agreed that they needed a ride to Nogales and that they would steal a car to drive there.

We believe that this evidence sufficiently established probable cause to believe that the three agreed to steal a car and take it to Nogales, a reasonably foreseeable consequence of which was that they would be pursued by law enforcement officers and that if they fled, they could endanger others. They were, indeed, in the midst of the transportation of the vehicle. That there was no evidence that Lara–Aguilar or Cordero did anything to assist in the actual fleeing because they were not driving or, similarly, that they were not the drivers who endangered the woman and her child, does not mean that, as a matter of law, they could not be held criminally liable for those offenses. Indeed, we note that A.R.S. § 13–304(2) specifically provides that it is not a defense to accomplice liability that "[t]he accused belongs to a class of persons who by definition of the offense are legally incapable of committing the offense in an individual capacity." Moreover, we note that from the fact that these defendants continued to run after the vehicle stopped it can be inferred that they intended to flee even while in the vehicle.

The justice court was only required to find probable cause to hold Cordero and Lara–Aguilar for trial, Ariz.R.Crim.P. 5.3(a), 17 A.R.S., that is, probable cause that an offense was committed and these defendants committed it. Ariz.R.Crim.P. 5.4(a). In reviewing that determination, the superior court could only remand for a

new finding of probable cause if there was a denial of a substantial procedural right or there was "no credible evidence of guilt...." Ariz.R.Crim.P. 5.5(a). The superior court in this case not only refused to remand but found as a matter of law that the unlawful flight and endangerment charges had to be dismissed.

We conclude that, although the court correctly rejected liability based on the *Pinkerton* doctrine, the evidence was sufficient to establish probable cause based on accomplice liability and the court erred in ordering that these charges be dismissed.

### DEFENDANTS' APPEAL

■ Lara–Aguilar and Contreras contend that they were denied due process and a fair trial when the trial court excused a juror who admitted that she did not understand English. First, the record supports the trial court's explanation in denying the motion for new trial that the decision to excuse the juror was not based on bias or prejudice but the interests of justice. Second, we reject appellant's contention that imposition of this requirement is erroneous simply because there is no such requirement in the qualification statute. *See* A.R.S. § 21–201. In *State v. Cordova*, 109 Ariz. 439, 441, 511 P.2d 621, 623 (1973), our supreme court concluded that, notwithstanding any qualification statute, a person "who does not read and write English could still be constitutionally barred from service in the grand or petit jury." The court reasoned,

> [English] is the language in which the court's business is transacted and it is imperative that those who participate in the State's judicial system have a working knowledge of the English language. It would be an undue burden upon the State court system to have to translate for non-English speaking or reading jurors the proceedings conducted and written exhibits presented either before the grand jury or in the court of law itself.

*Id.*

Appellant relies on *State v. Marcham*, 160 Ariz. 52, 770 P.2d 356 (App.1988). That case, decided by Division One of this

court, is distinguishable. It involved a deaf juror who was included on the jury and assisted by a sign language interpreter, not a juror who was excused because she was unable to speak English. *See also People v. Lesara*, 206 Cal.App.3d 1304, 254 Cal. Rptr. 417 (1988) (no constitutional violation in statutory provision requiring exclusion of potential jurors who do not possess sufficient knowledge of English).

The record reveals that the juror was excluded only because of the language barrier and fails to demonstrate that this or any other juror was excluded because of race, nationality or any other impermissible basis. As the record does not support the defendants' argument that they were deprived of a jury composed of a fair cross section of their community, we see no error.

## CONCLUSION

We have reviewed the entire record for fundamental error and, with regard to the appeals of Lara–Aguilar and Contreras, we have found none and therefore affirm the convictions and the sentences imposed. However, we reverse the trial court's dismissal of the charges of unlawful flight and endangerment with respect to Lara–Aguilar and Cordero and we remand for further proceedings.

DRUKE, P.J., and FERNANDEZ, J., concur.