898 P.2d 483

**STATE of Arizona, Appellee,**

v.

**Forest Dale SANDERSON, Appellant.**

**No. 1 CA–CR 92–1715.**

Court of Appeals of Arizona,
Division 1, Department B.

April 4, 1995.

Review Denied July 11, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Linda L. Knowles, Asst. Atty. Gen., Phoenix, for appellee.

Dan Cowser, Flagstaff, for appellant.

## OPINION

EHRLICH, Judge.

Forest Dale Sanderson ("defendant") appeals his conviction and sentence for one count of child molestation under former Ariz. Rev.Stat.Ann. ("A.R.S.") section 13–604.01 (1989). Because he has failed to establish a *prima facie* violation of his right to a jury representing a fair cross-section of the community, as required by the Sixth Amendment to the United States Constitution, and because the trial court did not commit any reversible error, we affirm.

### FACTS [1] AND PROCEDURAL HISTORY

In August 1989, the defendant travelled from Tucson to a campground in Apache County with two children of his son's girlfriend: J.A., a nine-year-old girl, and her brother, S.M., age 11. As the defendant and the children sat around their campfire, they heard a noise in the brush, which the defendant suggested was caused by a bear. J.A. became frightened and climbed on the defendant's lap. As she sat there, the defendant put his hand inside her sweat pants and touched her between her legs. J.A. said that

---

1. We view the facts at trial in the light most favorable to sustaining the jury's verdict, resolving all reasonable inferences against the defendant. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

the touching lasted no longer than a minute and ended when she told the defendant that she had to go to the bathroom.

That night, as J.A. and S.M. tried to sleep in the back of the defendant's truck, the defendant put his hand inside J.A.'s sleeping bag and also tried to lift her out of the truck. S.M. helped her resist. J.A. said that the defendant touched her "rear end" when he placed his hand inside her sleeping bag.

The next day, the children left the camp-site and reported the molestation. Officers arrested the defendant who, under later questioning by a detective, admitted molesting J.A. He was charged with child molesta-tion, a class 3 felony and dangerous crime against children.

The defendant was tried *in absentia.* De-fense counsel argued that, because the defen-dant had consumed a large quantity of wine before J.A. climbed in his lap, the defendant was not motivated by sexual interest when he touched her. The jury found the defendant guilty as charged. After he was appre-hended in August 1992, the trial court sen-tenced the defendant to a presumptive term of 17 years. He timely appealed, presenting the following issues:

1. Whether the trial court erred in deny-ing the defendant's challenges to the com-position of the jury pool and jury panel on the basis that they violated the Sixth Amendment;

2. Whether the court erred in determin-ing that the prosecutor's peremptory strikes of six prospective jurors were not based upon gender or race;

3. Whether the court erred in determin-ing that the defendant's absence from trial was voluntary and in permitting him to be tried *in absentia;*

4. Whether A.R.S. section 13–1407, defin-ing child molestation, is unconstitutional;

5. Whether the court erred in instructing the jury on the state's burden of proof on the absence of motivation by sexual inter-est as a defense to child molestation; and

6. Whether the court committed funda-mental error by failing to instruct the jury that the defendant need not testify and in

defining the lesser-included offense of con-tributing to the delinquency of a minor.

## DISCUSSION

### A. Challenge to Jury Composition

Prior to trial, the defendant moved to strike the jury pool, from which the 80–member jury venire was selected, and the jury panel itself, claiming that each violated the fair cross-section requirement of the Sixth Amendment to the United States Con-stitution. In the trial court and on appeal, the defendant argues that Native Americans, in particular, members of the Navajo Nation, were underrepresented in the jury pool from which his trial jury was selected.

At a pre-trial evidentiary hearing, Richard Lupke, the clerk of the superior court and jury commissioner for Apache County, de-scribed the system by which trial jurors were summoned. In January and July of each year, the clerk obtained copies of the county voter roll and the record of licensed drivers within the county. After assimilating the two lists, he compiled a master jury list of 1000 names. A jury questionnaire then was mailed to each name on the list. The clerk's office evaluated the returned questionnaires to determine if the prospective jurors were no longer statutorily eligible for jury service. Using criteria provided by superior-court or-der, the office also decided whether to honor prospective jurors' requests to be excused. With regard to the master jury list used in this case, Lupke testified, this reductive pro-cess resulted in a list, or pool, of 396 qualified jurors. Of the 604 persons eliminated, 298 were determined to be unqualified or were excused by the clerk's office. The remaining names were eliminated because question-naires either could not be delivered or were not returned.

The jury questionnaire did not ask pro-spective jurors to provide information re-garding race or ethnic origin. Nevertheless, evidence at the hearing demonstrated that postal zip codes within the county provided a means of demonstrating the percentage of Native Americans who would be called to serve as jurors because Apache County zip codes of 86000 or higher essentially were limited to the Navajo Nation. Zip codes

below that number encompassed areas of Apache County outside the reservation. Applying this criterion, the trial court determined that 61.1 percent of the qualified jurors resided on the reservation. The court also found that 94 percent of the residents of the reservation were Native American and that 74.9 percent of the population of Apache County was Native American. However, because the court concluded that any underrepresentation of Native Americans on the jury pool was not the result of "systematic" exclusion, it denied the defendant's motion to strike the jury pool.

Immediately prior to trial, the defendant moved to strike the jury panel on Sixth Amendment grounds. In support of his motion, he argued that, of the 80 persons summoned, 50 jurors resided on the reservation. Thirteen persons eventually were excused by the clerk's office prior to trial, resulting in a panel of 67, 41 of whom resided on the reservation.

■ To establish a *prima facie* violation of the Sixth Amendment's fair cross-section requirement, the defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). If the defendant satisfies these requirements, the burden shifts to the state to demonstrate a significant state interest "manifestly and primarily" advanced by the selection criteria at issue. *Id.* at 367, 99 S.Ct. at 670.

■ There is no dispute regarding the first element of the *Duren* analysis; Native Americans are a distinctive group within Apache County. With regard to the second element, underrepresentation of Native Americans, the proper comparative focus is the jury venire from which the defendant's jury was chos·n. *See id.* at 362–63, 367, 99 S.Ct. at 667–68, 670. Applying the trial court's finding that 94 percent of the jurors from zip codes on the reservation were Native American, roughly 59 percent of the panel members were members of that group. Contrasting that figure with the 74.9 percent of Apache County residents who are Native American, an "absolute disparity" of 15.9 percent results.

Lesser absolute disparities have been sufficient to trigger further inquiry by the United States Supreme Court, *see Alexander v. Louisiana*, 405 U.S. 625, 627–28, 92 S.Ct. 1221, 1223–24, 31 L.Ed.2d 536 (1972) (14.0 percent); *Hernandez v. Texas*, 347 U.S. 475, 480–81, 74 S.Ct. 667, 671–72, 98 L.Ed. 866 (1954) (14.0 percent), and, without deciding the issue, the Arizona Supreme Court has indicated that an absolute disparity of 11 percent may, in appropriate cases, be sufficient to satisfy the second element of the *Duren* inquiry. *State v. Gretzler*, 126 Ariz. 60, 77, 612 P.2d 1023, 1040 (1980). Thus we conclude that the defendant has satisfied that element in this case.[2]

■ Our determination that Native Americans were underrepresented on the jury panel is *not* dispositive, however, because we agree with the trial court's conclusion that this result was not the product of systematic exclusion. The defendant offered three factors in the trial court as establishing system-

2. We recognize that a different conclusion may result if we consider the "comparative disparity" derived by dividing the absolute disparity by the percentage representation of the questioned group in the community. "This result measures the diminished likelihood that a member of the underrepresented group, when compared to the average person in the community, will be called to jury service." *State v. Lopez*, 107 Idaho 726, 692 P.2d 370, 376 (App.1984). In this case, dividing the absolute disparity of 15.9 percent by the 74.9 percent of Apache County residents who are Native American results in a comparative disparity of 21 percent.

While the Supreme Court has acknowledged both the comparative disparity and absolute disparity approaches, *see Alexander*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536, it has endorsed neither as the proper measurement for fair-cross-section analysis. A comparative disparity well below 50 percent is unlikely to be sufficient to establish underrepresentation, especially if the absolute disparity is also small. *Lopez*, 692 P.2d at 377.

atic exclusion. First, he argued that Native Americans were underrepresented on the master jury list because they registered to vote at a lower rate than other residents of Apache County. However, he failed to present any evidence to support this contention. The only evidence he offered was a consent decree issued in *United States v. State of Arizona, et al.*, CIV 88–1989, an action under the Voting Rights Act of 1965, 42 U.S.C. § 1973 *et seq.*, against Apache County and other defendants. While that action alleged, in part, "discriminatory voter registration," the consent decree specified that it "shall not be construed as evidence of a violation of the Voting Rights Act in any future litigation" and did not constitute an adjudication or admission by the defendants of a violation of the Act or its implementing regulations.

■ The defendant also argued that systematic exclusion of Native Americans occurred when the clerk of the superior court honored prospective jurors' requests to be excused on the basis of (1) an inability to understand English and (2) difficulty in obtaining transportation to the courthouse. The trial court's conclusion that granting excuses on the former ground did not violate the Sixth Amendment is easily supported, even though Lupke testified that most of the 72 prospective jurors excused were Native Americans. Although ability to understand English is no longer a requirement for voting and, therefore, is not a qualification for jury service, *see* A.R.S. §§ 16–101, 21–201, it is nevertheless an appropriate ground to be excused from service. *State v. Cordova*, 109 Ariz. 439, 441, 511 P.2d 621, 623 (1973); *State v. Cordero*, 174 Ariz. 556, 560, 851 P.2d 855, 859 (App.1992); *see also United States v. Aponte–Suarez*, 905 F.2d 483, 492 (1st Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 531, 112 L.Ed.2d 541 (1990) (finding no Sixth Amendment violation in exclusion of persons not proficient in English from Puerto Rican juries); *State v. Paz*, 118 Idaho 542, 551–52, 798 P.2d 1, 10–11 (1990) (even assuming that dismissal of non-English speakers constituted systematic exclusion under *Duren*, supported by significant state interest), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991).

At the evidentiary hearing, Lupke testified that not all jurors who asked to be excused because of transportation difficulties were excused. In fact, he noted that the juror questionnaire informed prospective jurors that such difficulties were not generally considered valid reasons for being excused. He went on to testify that jurors would not be excused, even if they claimed to have no transportation if they could be reached by telephone at their residence. He explained that, in those circumstances, he presumed that the juror could be contacted and told to arrange a ride to the courthouse. Essentially, then, the only jurors excused on the basis of transportation difficulties were those who had no transportation and no telephone. Lupke testified that "virtually" all of the prospective jurors excused on that basis resided on the reservation. The trial court found that 58 of the 62 prospective jurors excused on that basis resided on the reservation.

■ We do not find that, for purposes of the Sixth Amendment, the excusing of reservation residents on the basis of transportation difficulties was "systematic," i.e., "inherent in the particular jury selection process utilized." *Duren*, 439 U.S. at 366, 99 S.Ct. at 669. We base this conclusion in part on the fact that the criterion at issue was implicitly authorized by statute as an excuse for "hardship," *see* A.R.S. § 21–202(2), was facially neutral and, according to Lupke, was applied sparingly. In *Duren*, the Court noted that "it is unlikely that reasonable exemptions based on special hardship, incapacity, or community needs, 'would pose substantial threats that the remaining pool of jurors would not be representative of the community.'" *Id.* at 370, 99 S.Ct. at 671 (*quoting Taylor v. Louisiana*, 419 U.S. 522, 534, 95 S.Ct. 692, 700, 42 L.Ed.2d 690 (1975)). Granting excuses based on the application of neutral criteria to prospective jurors' individual situations does not constitute systematic exclusion. *People v. Stansbury*, 4 Cal.4th 1017, 17 Cal.Rptr.2d 174, 201, 846 P.2d 756, 783 (1993), *rev'd on other grounds*, —— U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *State v. Baker*, 249 Kan. 431, 819 P.2d 1173, 1181 (1991).

■ We also note that the defendant failed to show how long the Apache County clerk had been using the criteria he described to excuse persons with transportation difficulties. The length of time that purported underrepresentation occurs is relevant to the determination of systematic exclusion. *Ramseur v. Beyer*, 983 F.2d 1215, 1235 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993); *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988). While the defendant offered jury panel lists from two trials that preceded his, those exhibits did not show how the criteria at issue here may have been applied.[3] Because the defendant did not establish a *prima facie* violation of the Sixth Amendment by showing that Native Americans were systematically excluded from jury service, the trial court did not err in denying his motions to strike the jury pool and jury panel.

### B. Exercise of Peremptory Challenges

The defendant asserts that the state exercised its six peremptory jury challenges on the impermissible grounds of gender and race. *See J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state used its strikes to exclude six male members of the jury panel. The defendant asserted that four of the prospective jurors excused were Native American and that one was Hispanic.

The trial court implicitly determined that the defendant had made a *prima facie* showing that the strikes were made for discriminatory reasons, *see State v. Hernandez*, 170 Ariz. 301, 304, 823 P.2d 1309, 1312 (App. 1991), and ordered the state to explain them. The prosecutor's response as to why he struck the six jurors was as follows: C.B. because he was single, elderly and consumed alcohol; A.J. because he was single, unemployed and consumed alcohol; J.S. because he went to school with the defendant's attorney; H.R. because he was single, older and

taught school on the reservation; R.B. because he was single, consumed alcohol and had friends with alcohol problems; and B.W. because he consumed alcohol, had a friend with an alcohol problem and because he had expressed reluctance to sit as a juror. The prosecutor explained that he was concerned with a juror who might be biased toward the defendant, who "appears to be an older person who has an alcohol problem." He also expressed concern regarding single persons who might lack the necessary understanding to consider a case that involved children.

■ The trial court denied the defendant's *Batson* challenge. Because this determination centered upon an evaluation of the credibility of the prosecutor's explanation, we accord it great deference. *Hernandez*, 170 Ariz. at 304, 823 P.2d at 1312. The decision will not be set aside unless clearly erroneous. *Id.*

■ We find no error. The grounds asserted by the prosecutor were race- and gender-neutral. Prospective jurors' age, marital status and lack of employment have been identified as non-discriminatory reasons supporting the exercise of peremptory strikes. *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988) (age); *State v. Rodarte*, 173 Ariz. 331, 335, 842 P.2d 1344, 1348 (App.1992) (marital status); *Hernandez*, 170 Ariz. at 305, 823 P.2d at 1313 (work history). A prospective juror's expressed reluctance to serve will also support a strike, *United States v. Hawkins*, 781 F.2d 1483, 1485 (11th Cir.1986), as will prior contact with someone involved in the case. *State v. Medina*, 172 Ariz. 287, 290, 836 P.2d 997, 1000 (App.1992). Finally, the prosecutor's belief that certain persons might react sympathetically to the defendant was legitimate because the perceived sympathy was not based upon race or gender. *Hernandez*, 170 Ariz. at 305–306, 823 P.2d at 1313–14.

■ Contrary to the defendant's argument on appeal, *State v. Cruz*, 175 Ariz. 395, 857 P.2d 1249 (1993), does not undermine the prosecutor's justification of his strikes in this case. In *Cruz*, the supreme court held that,

---

3. Because the duration of systematic exclusion is significant, the trial court did otherwise err in

finding the exhibits irrelevant because they involved a different jury pool.

when "the state offers a facially neutral, but wholly subjective, reason for a peremptory strike, it must be coupled with some form of objective verification before it can overcome the *prima facie* showing of discrimination." *Id.* at 399, 857 P.2d at 1253. The court made clear that its concern was with "a party's assertion of a wholly subjective impression of a juror's perceived qualities." *Id.* Here, the reasons offered by the prosecutor for his strikes were not based on such impressions but, rather, on objective factors such as age, marital status, employment and consumption of alcohol. Although we are unable to independently verify each of the asserted grounds from the available record, each strike may be supported by the prospective juror's confirmation of at least one valid ground during voir dire. *See id.* ("[V]erification could come from the words of the prospective juror."); *State v. Reyes,* 163 Ariz. 488, 491, 788 P.2d 1239, 1242 (App.1989) (strike will be upheld if one ground for it is objectively verifiable, even though alternate ground is not). There was no error in denying the defendant's *Batson* challenge.

## C. Trial in Absentia

 We reject the defendant's contention that the trial court erred in allowing him to be tried *in absentia.* A defendant may waive his right to be present at trial by voluntarily absenting himself from it. *See* Arizona Rule of Criminal Procedure ("Rule") 9.1. In pertinent part, the rule provides: "[T]he court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, the right to be present at it, and a warning that the proceeding would go forward in his or her absence should he or she fail to appear."

 The record supports the trial court's determination that all of the factors supporting the inference of voluntary absence were established. Two release orders, signed by the defendant in September 1989, informed him of his right to be present at trial and that the proceedings could go on in his absence. The court again delivered these warnings at the defendant's arraignment in superior court, where he also was informed of his initial trial date. On the morning of

trial, after the defendant failed to appear, his counsel told the court that the defendant had notice of the actual trial date.

 The defendant argues that the presumption of voluntary absence was rebutted, noting that defense counsel also informed the court that the defendant's wife would testify that the defendant had left his home in Tucson intending to hitchhike to the trial in St. John's. We find no abuse of discretion in the court's implicit determination that counsel's offer of proof did not overcome the presumption. Rule 9.1 would be quickly eviscerated if the assertion that the defendant's whereabouts were unknown was sufficient to postpone a trial.

In this regard, it is appropriate to examine the record following the defendant's apprehension to resolve the issue. *See State v. Suniga,* 145 Ariz. 389, 392, 701 P.2d 1197, 1200 (App.1985); *State v. Fristoe,* 135 Ariz. 25, 34, 658 P.2d 825, 834 (App.1982). This record is devoid of any indication that the defendant's absence from trial was involuntary. To the contrary, an addendum to the presentence report indicated only that the defendant had changed residences, but he remained in Tucson until he was apprehended.

## D. Burden of Proof Regarding Child Molestation

 The defendant argues that the statutes defining child molestation are unconstitutional because they impermissibly shift to him the burden of disproving an element of the offense. He also argues that the jury instructions in this case inadequately informed the jury of the state's burden of proof. We reject both contentions.

At issue are former A.R.S. sections 13–1407 and 13–1410 (1989). At the time of the offenses, section 13–1410 provided:

A person who knowingly molests a child under the age of fifteen years by directly or indirectly touching the private parts of such child or who causes a child under the age of fifteen years to directly or indirectly touch the private parts of such person is guilty of a class 2 felony and is punishable pursuant to § 13–604.01.

In pertinent part, former section 13–1407(E) provided: "It is a defense to prosecution pursuant to § 13–1410 that the defendant was not motivated by a sexual interest."

The defendant asserts that these statutes effectively created a presumption regarding the existence of sexual motivation which he was required to disprove. He argues that this violated due process. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). This constitutional argument was not raised in the trial court and, as a result, has been waived on appeal. *E.g., State v. Tison*, 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

In any event, we find the argument to be without merit. The statutes in question did not allocate the burden of proof on any element to the defendant but, rather, created an affirmative defense regarding motive. This is constitutionally permissible. *Patterson v. New York*, 432 U.S. 197, 205–07, 97 S.Ct. 2319, 2324–25, 53 L.Ed.2d 281 (1977); *Gretzler*, 126 Ariz. at 89, 612 P.2d at 1052.

■ We likewise reject the suggestion that the statutes, which contain no reference at all to a presumption, nevertheless create a presumption on the "element" of motivation by sexual interest. *See Patterson*, 432 U.S. at 205, 97 S.Ct. at 2324. Contrary to the defendant's implication, proving the existence of such motivation was not necessary to establish guilt of child molestation under the statute at issue. *See Maricopa County Juvenile Action No. JV–121430*, 172 Ariz. 604, 607, 838 P.2d 1365, 1368 (App.1992).[4]

■ The trial court ruled that testimony regarding the defendant's intoxication was sufficient to raise the defense that he was not motivated by a sexual interest. Accordingly, it instructed the jury as to the existence of that defense and then gave the following instruction regarding the state's burden of proof:

> The law does not require the defendant to prove his innocence. Every defendant is presumed by law to be innocent. The State must prove the defendant guilty beyond a reasonable doubt. This means the State must prove each element of the charge beyond a reasonable doubt.
>
> In addition, the State must prove beyond a reasonable doubt that any defense raised by the defendant is not valid. If you can conclude that the State has not met its burden of proof beyond a reasonable doubt, then reasonable doubt exists and the defendant must be acquitted of that charge.

The defendant argues that the instruction was improper because it did not precisely track language recommended in *State v. Duarte*, 165 Ariz. 230, 232, 798 P.2d 368, 370 (1990).[5] This argument is baseless; the instruction given by the trial court contained no significant deviation from the one recommended in *Duarte*. Moreover, contrary to the defendant's argument, the court did not instruct the jury in language that was condemned in *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) (jury instruction in self-defense case stating, "If you decide that the defendant's conduct was justified, you must find the defendant not guilty," was fundamental error).

### E. Instruction that the Defendant Need Not Testify

■ The defendant next argues that the trial court committed fundamental error in failing to instruct the jury that he was not required to testify. However, when the court settled jury instructions, defense counsel stated that he did not want such an instruction given to the jury because it would call attention to the defendant's absence. When counsel specifically declines an instruc-

---

4. Proving sexual motivation remains unnecessary under the current version of the statute. *See* A.R.S. § 13–1410 (Supp.1994).

5. The supreme court, in the context of justification based on self-defense, recommended that trial courts use the following language:

> If evidence was presented that raises the issue of self-defense [or some other justification], then the state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. If the state fails to carry this burden, then you must find the defendant not guilty of the charge.

*Duarte*, 165 Ariz. at 232, 798 P.2d at 370.

tion, no fundamental error is present because the court's failure to instruct does not interfere with the defendant's theory of the case nor does it deny him a right essential to his defense. *See State v. Whittle,* 156 Ariz. 405, 407, 752 P.2d 494, 496 (1988).

*F. Instruction on Contributing to the Delinquency of a Minor*

 ·Contending that the trial court's instruction on contributing to the delinquency of a minor, a lesser-included offense of child molestation, was fundamentally erroneous, the defendant argues that the instruction should have included language informing the jury that he could have committed the offense through an act of "neglect or omission of duty." A.R.S. § 13–3614.

We find no reversible error. The instruction given by the trial court was the one requested by defense counsel. A party may not complain on appeal that the trial court gave an instruction that he specifically requested. *E.g., State v. Diaz,* 168 Ariz. 363, 365, 813 P.2d 728, 730 (1991). Moreover, the modification suggested by the defendant on appeal was unnecessary because no evidence supported the conclusion that the defendant contributed to the delinquency of a minor other than by the act that supported the molestation charge.

*CONCLUSION*

Pursuant to A.R.S. section 13–4035, we have reviewed the record on appeal for fundamental error and found none. The defendant's conviction and sentence are affirmed.

LANKFORD, P.J., and TOCI, J., concur.