2007-NMSC-009

155 P.3d 745

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Raul PACHECO, Defendant–Respondent.**

**No. 29,557.**

Supreme Court of New Mexico.

Feb. 27, 2007.

Gary K. King, Attorney General, Martha Anne Kelly, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} In this case, an interpreter was sworn to interpret for two non-English speaking jurors throughout the court proceedings. Defendant appealed his convictions asserting that the interpreter *should not have been* present during jury deliberations without being given an additional instruction not to participate in the deliberations. The New Mexico Court of Appeals agreed in a majority opinion, holding that the trial court should have given a pre-deliberation instruction to the interpreter as suggested by the Non–English Speaking Juror Guidelines (NES Guidelines). *State v. Pacheco*, 2006–NMCA–002, ¶¶ 10, 18, 138 N.M. 737, 126 P.3d 553; *see* NES Guidelines, § III(C)(5) (attached as Appendix C to this opinion). Because the trial court did not give a pre-deliberation instruction to the interpreter, the Court of Appeals concluded the interpreter was not authorized to be in the jury room during deliberations, and thus, Defendant was pre-

sumptively prejudiced. *Pacheco*, 2006–NMCA–002, ¶¶ 18, 21, 138 N.M. 737, 126 P.3d 553. Finding that the State made no attempt to overcome the presumption of prejudice, the Court of Appeals reversed Defendant's convictions and remanded for a new trial. *Id.* ¶¶ 21–22.

{2} This case requires us to address whether an interpreter's presence during jury deliberations is unauthorized, thus giving rise to a presumption of prejudice, and to clarify the application of the NES Guidelines. We hold under existing case law, once an interpreter has been given the mandatory interpreters' oath to interpret testimony correctly, an interpreter is authorized to be in the room during deliberations to assist non-English speaking jurors. Furthermore, because the interpreter is authorized to be present during deliberations, no presumption of prejudice arises. To obtain a new trial, a party must present evidence of prejudice by showing that the interpreter behaved improperly during deliberations. Because Defendant did not demonstrate that the interpreter *acted improperly* by, for example, participating in the deliberations, Defendant failed to prove he was prejudiced by the interpreter's presence in the jury deliberation room. We therefore reverse the Court of Appeals. However, we take this opportunity to make certain suggested procedures in the NES Guidelines mandatory in future cases involving an interpreter for a non-English speaking juror.

## I. BACKGROUND

{3} Defendant was charged with three counts of criminal sexual penetration of a minor and one count of criminal sexual contact of a minor after his girlfriend's twelve-year old daughter alleged that Defendant forced her to engage in sexual acts with him. During the trial, two jurors required assistance from an interpreter who was present to interpret English into Spanish. Additionally, one witness who testified during the trial also required the assistance of an interpreter.

{4} Prior to the commencement of the trial, the judge administered the following oath to the interpreter: "Do you solemnly swear that you will faithfully and impartially

interpret English into Spanish and Spanish into English the testimony about to be given in the cause now on trial so help you God?" The interpreter agreed to faithfully and impartially translate testimony. Nothing in the record indicates that the trial judge administered an additional oath or instruction to the interpreter regarding the interpreter's role during jury deliberations, nor was such an instruction requested by either party.

{5} After the jury convicted Defendant of three counts of criminal sexual penetration of a minor, Defendant made a motion for a new trial, arguing among other things that "the Court neglected to give an oath to the interpreter that she would not participate directly or indirectly in the deliberations." Defendant further alleged that a new trial was necessary because following deliberations the trial court did not require the interpreter to swear, on the record, that the deliberations were free from undue influence. However, Defendant did not point to any allegations of improper behavior by the interpreter. The record is silent as to whether the trial judge ruled on Defendant's motion for a new trial. Thus, the motion was automatically denied thirty days after Defendant filed the motion. *See* Rule 5–614(C) NMRA ("If a motion for new trial is not granted within thirty (30) days from the date it is filed, the motion is automatically denied.").

{6} The Court of Appeals reversed Defendant's convictions and remanded for a new trial. First, the court concluded that the interpreter's presence in the jury room was unauthorized without an additional oath or instruction from the trial court to ensure that she neither participate nor interfere with the jury's deliberations. *Pacheco*, 2006–NMCA–002, ¶ 15, 138 N.M. 737, 126 P.3d 553. Second, although the record did not indicate any improper behavior by the interpreter that might have prejudiced Defendant, the court held that a presumption of prejudice arose when the interpreter was not given an additional oath or instruction, and that the State did not overcome this presumption. *Id.* ¶ 21. The Court of Appeals found support for its holding in the NES Guidelines, which encourage the use of such an instruction. *See id.* ¶ 10.

## II.  DISCUSSION

### A.  Defendant Did Not Preserve His Claim of Error, But We Review the Claim as a Matter of General Public Interest.

{7} As noted previously, Defendant did not request the trial court to give a pre-deliberation oath to the interpreter, nor did Defendant object when the trial court did not give such an oath. Defendant raised the issue in his motion for new trial. To preserve an issue for appellate review under Rule 12–216(A), "it must appear that a ruling or decision by the district court was fairly invoked." "We require a party to object at trial and invoke a ruling from the trial court in order to 'alert the trial court to a claim of error so that it has an opportunity to correct any mistake.' " *State v. Reyes*, 2002–NMSC–024, ¶ 41, 132 N.M. 576, 52 P.3d 948 (quoting *State v. Gomez*, 1997–NMSC–006, ¶ 29, 122 N.M. 777, 932 P.2d 1).

{8} Because the interpreter assisted non-English speaking jurors throughout the trial it is reasonable to assume Defendant understood the interpreter would be present during jury deliberations. Therefore, Defendant should have either requested the court to administer a pre-deliberation oath to the interpreter or objected when such an oath was not given before deliberations. Doing so would have allowed the trial court to address the issue. Because Defendant did neither, he did not preserve the issue for appellate review. However, we may review the claim of error if it is a question involving fundamental error, fundamental rights of a party, or an issue of general public interest. *See* Rule 12–216(B)(1)–(2) NMRA (stating the exceptions to the preservation rule).

{9} Defendant argues this case involves fundamental error because the interpreter was not authorized to be present during jury deliberations without a pre-deliberation oath or instruction. However, as the Court of Appeals noted, *Pacheco*, 2006–NMCA–002, ¶ 14, 138 N.M. 737, 126 P.3d 553, New Mexico case law holds that an unauthorized presence in the jury room gives rise to a presumption of prejudice which the State may

rebut. *See State v. Coulter,* 98 N.M. 768, 769–70, 652 P.2d 1219, 1220–21 (Ct.App. 1982).

{10} Although this case implicates Defendant's fundamental right to a trial by a fair and impartial jury, we are not persuaded that we may review the claimed error on that basis. *See* U.S. Const. amend. VI (guaranteeing a defendant the "right to a speedy and public trial, by an impartial jury"); N.M. Const. art. II, § 12 ("The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."). Fundamental rights, such as the right to trial by a fair and impartial jury, may be waived or lost. *State v. Sanchez,* 2000–NMSC–021, ¶ 26, 129 N.M. 284, 6 P.3d 486. Defendant waived his right by failing to timely invoke the ruling of the trial court. *See Vigil v. Atchison, T. & S.F. Ry.,* 28 N.M. 581, 590, 215 P. 971, 974 (1923) (holding that counsel waived any alleged error as to an interpreter's presence during deliberations by waiting to object until after the interpreter entered the jury room), *overruled on other grounds by Dunleavy v. Miller,* 116 N.M. 353, 356 n. 1, 862 P.2d 1212, 1215 n. 1 (1993); *cf. State v. Escamilla,* 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988) (finding that a defendant waives his right to trial by a fair and impartial jury by waiting to object to jury qualifications until after the verdict is rendered).

{11} What remains is our discretion under Rule 12–216(B) to consider an issue not preserved below under the general public interest exception. *See* Rule 12–216(B)(1) NMRA. Although this exception should be used sparingly, we choose to do so in this case because of the important competing constitutional interests. *See* U.S. Const. amend. VI; N.M. Const. art. VII, § 3. We believe the large population of non-English speaking citizens in New Mexico who may require the assistance of an interpreter to effectively exercise their constitutional right to serve as jurors, and the impact of this case on a defendant's right to a fair and impartial trial by jury, justifies our review of the claimed error.

**B. Because of the Constitutional Provisions Involved, the Proper Standard of Review is De Novo.**

{12} In determining whether the claimed error occurred in this case, we must balance a "citizen's right to serve as a juror regardless of his or her ability to speak, read or write the English or Spanish languages," N.M. Const. art. VII, § 3, with a defendant's right to trial by a fair and impartial jury. U.S. Const. amend. VI; N.M. Const. art. II, § 12. In light of the constitutional provisions involved, we apply a de novo standard of review. *See State v. Brown,* 2006–NMSC–023, ¶ 8, 139 N.M. 466, 134 P.3d 753 ("Because this case implicates two important constitutional rights, . . . our review is *de novo.*").

{13} At the outset, we note that the record in this case does not reflect whether the interpreter was actually present during the jury deliberations. However, failure to provide an interpreter for jurors who require such assistance would be contrary to *State v. Rico,* in which we held that "Article VII, Section 3 [of the New Mexico Constitution] requires that a trial court make every reasonable effort to accommodate a potential juror for whom language difficulties present a barrier to participation in court proceedings." 2002–NMSC–022, ¶ 11, 132 N.M. 570, 52 P.3d 942. Because the record in this case is deficient with respect to whether the interpreter was present, we indulge every presumption " 'in favor of the correctness and regularity of the [trial] court's judgment.' " *State v. Rojo,* 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (quoting *In re Ernesto M.,* 1996–NMCA–039, ¶ 19, 121 N.M. 562, 915 P.2d 318) (alteration in original). Therefore, we presume that an interpreter was present in the jury room to assist the non-English speaking jurors in accordance with our holding in *Rico.* Additionally, we note that the State does not dispute that the interpreter was present in the jury room during deliberations.

**C. A Sworn Interpreter Is an Authorized Presence in the Jury Room.**

{14} The use of an interpreter for a non-English speaking juror during deliber-

ations raises a concern regarding the presence of a thirteenth person in the jury room and the potential impact that the interpreter's presence has on a defendant's right to a fair and impartial trial by jury. We agree with the Court of Appeals that "[t]he heart of a jury's function lies in its deliberations," and that the jury's deliberative process is sacrosanct. *Pacheco,* 2006–NMCA–002, ¶ 7, 138 N.M. 737, 126 P.3d 553. Outside influences or intrusions on the jury's deliberative process cannot be tolerated. Accordingly, the presence of an unauthorized person during jury deliberations creates a presumption of prejudice which may be rebutted by the State. *See Coulter,* 98 N.M. at 770, 652 P.2d at 1221 (holding that defendant was entitled to a new trial since "the State made no showing to overcome the presumption of prejudice created by the presence of 'the thirteenth juror' ").

{15} Yet, as the Court of Appeals's majority opinion recognized, "[t]he presence of an interpreter during jury deliberations does not constitute, per se, the presence of an unauthorized person giving rise to a presumption of prejudice." *Pacheco,* 2006–NMCA–002, ¶ 8, 138 N.M. 737, 126 P.3d 553. In fact, depending on the circumstances, the presence of an interpreter in the jury room may be constitutionally required to ensure that jurors with language difficulties may fully participate in court proceedings, such as jury deliberations. We held in *Rico* that if an interpreter is needed for a non-English speaking juror, then Article VII, Section 3 of the New Mexico Constitution requires the trial court to provide the juror with an interpreter. 2002–NMSC–022, ¶ 16, 132 N.M. 570, 52 P.3d 942. Thus, the presence of an interpreter during deliberations who has been given an oath to correctly interpret testimony in the case is consistent with our interpretation of Article VII, Section 3 in *Rico.* Accordingly, we are persuaded that a sworn interpreter is authorized to be present during jury deliberations to assist non-English speaking jurors.

{16} Our holding is consistent with a long line of New Mexico cases recognizing sworn jury interpreters as authorized in the jury room. Our case law dating back to the territorial court of New Mexico in the 1800s has treated sworn jury interpreters as officers of the court. In *Territory v. Romine,* the Supreme Court of the Territory of New Mexico noted New Mexico's unique history of once having been a part of the Republic of Mexico, and acknowledged the impracticability and unjustness of having an all English-speaking jury. 2 N.M. 114, 123 (1881). In several counties at that time "a sufficient number of English speaking jurors could not have been obtained to try any important case." *Id.* Accordingly, in any county where juries included Spanish-speaking jurors, "all the proceedings [were] translated by a sworn interpreter, *who is a court officer.*" *Id.* at 124 (emphasis added).

{17} In *Thomason v. Territory,* the Supreme Court of the Territory of New Mexico confronted a situation very similar to the one before us today: a challenge to the use of an interpreter during jury deliberations. 4 N.M. 154, 13 P. 223 (1887). In *Thomason,* the trial court had directed the interpreter to attend the jury deliberations at the request of the jury because they were unable to communicate with each other. *Id.* at 167, 13 P. at 228. The Supreme Court of the Territory of New Mexico held that

> [u]nder such circumstances, the statute provides for an interpreter, who acts under oath, and who is an *officer of the court,* and through him the business is conducted in both languages. While it is not in terms, provided that such an interpreter may attend the jury in its deliberations, yet the necessity therefor is frequently imperative.

*Id.* at 166, 13 P. at 228 (emphasis added). The court found that this was unlike a situation in which "a stranger goes into the jury room as a spy upon the deliberations, or as an unwelcome intruder," and, thus, upheld the use of the interpreter during deliberations. *Id.* at 167, 13 P. at 228.

{18} Most recently, in *State ex rel. Martinez v. Third Judicial District Court,* attached as an appendix to *Rico,* we denied a petition for a writ of prohibition which alleged that provisions adopted by the Third Judicial District Court, allowing for the use of an interpreter for non-English speaking jurors, amounted to an unauthorized pres-

ence in the jury room. *Rico*, 2002–NMSC–022 app. at 575, 132 N.M. 570, 52 P.3d 942. In our denial of the writ, we rejected this contention and stated that "the use of court interpreters during jury deliberations *does not constitute an unauthorized presence in the jury room.*" *Id.* (emphasis added). These cases demonstrate that since New Mexico's territorial days we have consistently treated sworn jury interpreters as officers of the court and as an authorized presence in the jury room.

{19} Based on our prior interpretation of Article VII, Section 3 requiring trial courts to make every reasonable effort to accommodate non-English speaking jurors, and our precedent describing interpreters as officers of the court, we conclude that an interpreter is authorized to be present in the jury room during deliberations so long as the interpreter has taken the initial oath to interpret testimony. The mandatory interpreters' oath instructs the interpreter to "solemnly swear or affirm that [the interpreter] will correctly interpret from English to Spanish [or other applicable language] and from Spanish to English all questions and answers and matters pertaining to this cause under penalty of law." UJI 13–212 NMRA; *see* NMSA 1978, § 38–10–8 (1985) (providing that "[e]very interpreter appointed pursuant to the provisions of the Court Interpreters Act ..., before entering upon his duties, shall take an oath"). Having taken the oath to correctly interpret testimony, the interpreter becomes an officer of the court, and the "interpreter's role is bound by ethical constraints, court rules and orders, and court instructions." *Rico*, 2002–NMSC–022, 132 N.M. 570, 52 P.3d 942 app. at 575. Because a sworn interpreter acts as an officer of the court and is bound by the interpreter's oath, we hold that a sworn interpreter is authorized to be in the jury room during deliberations when a juror requires such assistance in order to fully participate in the court proceedings.

**D. Evidence of Prejudice Is Necessary in Cases Involving a Sworn Interpreter.**

{20} Having determined that a sworn interpreter is an authorized presence in the jury deliberation room, we next address the issue of prejudice. When an unauthorized person is present during jury deliberations, a presumption of prejudice attaches that may be rebutted by the State. *Coulter*, 98 N.M. at 769, 652 P.2d at 1220. However, in circumstances involving a sworn interpreter who is authorized to be present during jury deliberations, we hold that prejudice must be established by evidence showing that an interpreter acted outside the bounds of the interpreter's oath. Furthermore, because a sworn interpreter is an officer of the court, our case law supports a presumption that the interpreter acted properly, absent any evidence to the contrary.

{21} In *Thomason*, the Supreme Court of the Territory of New Mexico determined that once the interpreter was sworn and sent to the jury room, the presumption was that the interpreter, as an officer of the court, would "act as *the medium of communication*, and take no part in the deliberation." 4 N.M. at 167, 13 P. at 228. The court also noted that there was no evidence of any improper behavior by the interpreter, nor any indication that the interpreter's presence influenced the jurors or impacted the jurors' ability to fulfill their duties. *Id.* As such, the court held that it was not willing to presume that the interpreter acted improperly or to the prejudice of the defendant. Instead, the court held that "[a]cting under oath and the order of the court, the presumption should be in favor of proper action by [the interpreter], rather than against it." *Id.*

{22} Our recent decision in *State v. Rodriguez* also demonstrates that a presumption of prejudice is not necessary when the facts involve an officer of the court. 2006–NMSC–018, ¶ 7, 139 N.M. 450, 134 P.3d 737. *Rodriguez* did not involve a jury interpreter. *Rodriguez* addressed whether we should presume prejudice in a situation in which a trial court reassembled the jury to correct the jury's verdict after the foreman mistakenly signed the wrong verdict form. *Id.* ¶¶ 1–2. We declined to presume prejudice because the trial judge was able to show that the jury did not leave the court's presence or control. *Id.* ¶ 7. Additionally, we held that "because they are *officers of the court*, we decline to

presume that court officials have contaminated a juror or the jury." *Id.* (emphasis added).

{23} Absent any evidence that an interpreter acted improperly during deliberations, other jurisdictions have also declined to find prejudice when a sworn interpreter is present in the jury room. In *State v. Marcham,* the Arizona Court of Appeals addressed a claim from a defendant that an interpreter for a deaf juror resulted in the presence of an unauthorized person during jury deliberations. 160 Ariz. 52, 770 P.2d 356, 357 (Ct. App.1988). The court pointed out that there was "a presumption that court interpreters [would] do their duty and that an oath [would] be properly administered." *Id.* Ultimately, the court concluded that "in the absence of any evidence to the contrary, a presumption of regularity exists with respect to the oath of the interpretor [sic] and her proper interpretation of the proceedings in the trial court." *Id.* at 359.

{24} The New Mexico Court of Appeals appeared to rely on *United States v. Dempsey,* 830 F.2d 1084 (10th Cir.1987), to support its holding that a presumption of prejudice arose when the trial court failed to give a pre-deliberation instruction to the interpreter. *Pacheco,* 2006–NMCA–002, ¶¶ 9, 18, 138 N.M. 737, 126 P.3d 553. In *Dempsey,* the trial judge administered an oath requiring the interpreter to interpret correctly, but the trial judge also specifically instructed the interpreter that she could not participate in jury deliberations. 830 F.2d at 1086–87. In discussing *Dempsey,* the New Mexico Court of Appeals drew the conclusion that "[b]ecause the interpreter's 'oath to act strictly as an interpreter and not to participate in the deliberations' sufficiently protected the jury's deliberations, the [Tenth Circuit] held that the interpreter's presence did not warrant a new trial of the defendant." *Pacheco,* 2006–NMCA–002, ¶ 9, 138 N.M. 737, 126 P.3d 553 (quoting *Dempsey,* 830 F.2d at 1092).

{25} However, *Dempsey* does not hold that a presumption of prejudice arises when a pre-deliberation instruction is not given. Rather, the Tenth Circuit in *Dempsey* relied on the fact that a pre-deliberation instruction was given, and the fact that the interpreter took an oath to interpret correctly, as support for its presumption that the interpreter complied with that instruction absent any evidence of impropriety. *Id.* at 1091–92. The court made clear that the absence of evidence of misconduct was key in its decision not to order a new trial, finding that "[a] different situation would arise if there were evidence that the interpreter behaved improperly." *Dempsey,* 830 F.2d at 1092. The court also stated that "any evidence from jurors that the interpreter acted other than strictly as an interpreter would warrant a new trial," but found that without any such evidence, ordering a new trial would be based on speculation rather than fact. *Id.* at 1091–92. Thus, *Dempsey* stands for the proposition that an interpreter is presumed to comply with the oaths and instructions given by the trial court, and there is no prejudice unless the defendant presents evidence of interpreter misconduct.

{26} Because a sworn interpreter is an officer of the court, there is a presumption that the interpreter acted only as a "medium of communication," and not as a participant in jury deliberations absent any evidence to the contrary. *See Thomason,* 4 N.M. at 167, 13 P. at 228; *see also Rodriguez,* 2006–NMSC–018, ¶ 7, 139 N.M. 450, 134 P.3d 737 ("[B]ecause they are officers of the court, we decline to presume that court officials have contaminated a juror or the jury, although counsel are at liberty to raise the issue."). Without any evidence that an interpreter exceeded his or her role by improperly participating in jury deliberations, a presumption of regularity exists with respect to an interpreter's compliance with the oath to correctly translate testimony. *See Marcham,* 770 P.2d at 359; *see also Lujan ex rel. Lujan v. Casados–Lujan,* 2004–NMCA–036, ¶ 20, 135 N.M. 285, 87 P.3d 1067 ("Bedrock principles of appellate law dictate that matters not of record present no issue for review, that there is a *presumption of regularity in the proceedings below,* and that error must be clearly demonstrated.") (emphasis added). Accordingly, we decline to find prejudice unless there is a showing that an interpreter acted improperly.

{27} In this case, Defendant failed to present any evidence that the interpreter acted improperly. The record does not contain any allegation or indication that the interpreter acted outside her role as interpreter during deliberations. No jurors came forward alleging improper behavior by the interpreter. Defendant acknowledged this fact in his Answer Brief, stating that "no jurors made allegations that [the interpreter] improperly participated in the jury's deliberations." Yet, Defendant would have us reverse his convictions on the basis that "the record is not clear that she did not [participate in deliberations]." Defendant urges us to read the record's silence as supporting an assertion that the interpreter behaved improperly during deliberations. If we were to do so and order a new trial for Defendant, we would be basing our decision not on fact, but solely on speculation. We decline to speculate that improper behavior occurred, and instead presume the interpreter acted properly within the bounds of her oath.

{28} While administering a pre-deliberation instruction to the interpreter regarding the interpreter's role during deliberations would have been appropriate and would have eliminated the due process concerns implicated in this case, it was not mandatory to do so when Defendant stood trial. Because there was no evidence demonstrating misconduct by the sworn interpreter, the Court of Appeals erred in holding that the interpreter's presence in the jury deliberations room resulted in an automatic presumption of prejudice simply because the trial court did not give the additional instruction. All that was required at the time Defendant's trial took place was that the trial court administer an oath to the interpreter that she correctly interpret the testimony in the case. See § 38–10–8 (mandating that "[e]very interpreter appointed pursuant to the provisions of the Court Interpreters Act ... shall take an oath that he will make a true and impartial interpretation"); UJI 13–212 NMRA (providing the oath that should be given to interpreters in district court). Because the trial court administered the initial oath to the interpreter, no presumption of prejudice arose, and Defendant was required to demonstrate prejudice with evidence that the interpreter acted improperly.

### E. Trial Courts Are Required to Give Additional Instructions to Interpreters and Jurors in Future Cases.

{29} The State argues that the Court of Appeals erred by giving the NES Guidelines the force of law when it held that a pre-deliberation oath was required. We do not read the Court of Appeals's opinion as giving the NES Guidelines the force of law. However, in light of the importance of preserving the sanctity of the jury deliberation room, we take this opportunity to make certain NES Guidelines mandatory, as detailed below, and to require an additional instruction to the jury in future cases involving interpreters.

{30} The NES Guidelines were developed in response to our order in *Martinez*, in which we held that the "broad language of [Article VII, Section 3] explicitly prohibits the automatic dismissal of an otherwise qualified person based solely on their inability to speak, read or write the English or Spanish languages." *Rico*, 2002–NMSC–022, 132 N.M. 570, 52 P.3d 942 app. at 575. The Committee of the Chief Justice for Improvement of Jury Service in New Mexico considered the impact of the *Martinez* order on jury service and recommended that the Administrative Office of the Courts provide guidelines to our courts in assisting non-English speaking jurors. Comm. of the Chief Justice for Improvement of Jury Serv. in N.M., *Interim Report*, N.M.B. Bull., Oct. 26, 2000, at 12, 16. The Administrative Office of the Courts issued the Guidelines in 2000 pursuant to this Court's order. Order No. 00–8500, Sept. 11, 2000, *in* N.M.B. Bull., Oct. 26, 2000, at 21–22.

{31} In part, the NES Guidelines suggest that prior to jury deliberations, the trial judge should, on the record and in the presence of the jury, instruct the interpreter not to interfere or participate in any way with jury deliberations. NES Guidelines, § III(C)(5). Additionally, the NES Guidelines recommend that after jury deliberations, but before the verdict is announced, the trial judge should question the interpreter on the record whether the interpreter

abided by the oath given not to participate in deliberations. *Id.* § III(C)(6). The guidelines also allow for a party to request that the jurors be questioned regarding whether the interpreter improperly participated in the deliberations. *Id.*

{32} Although the trial court in this case did not err by not complying with the NES Guidelines because they were not mandatory when Defendant stood trial, we believe that additional safeguards will help maximize a defendant's due process rights when an interpreter is present during jury deliberations. As a result, we take this opportunity to exercise our power of superintending control and adopt as mandatory the NES Guidelines regarding pre-deliberation and post-deliberation instructions for interpreters, as well as additional requirements for our courts when interpreters are used to assist non-English speaking jurors. *See* N.M. Const. art. VI, § 3 ("The supreme court shall have ... a superintending control over all inferior courts...."); *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975) ("Our constitutional power under N.M. Const. art. III, § 1 and art. VI, § 3 of superintending control over all inferior courts carries with it the inherent power to regulate all pleading, practice and procedure affecting the judicial branch of government.").

{33} Accordingly, we hold that in addition to the initial oath that must be given regarding correct interpretation, a trial court must comply with the following mandatory requirements. First, prior to excusing the jury for deliberations, the trial court must administer an oath, on the record in the presence of the jury, instructing the interpreter not to participate in the jury's deliberations. *See* NES Guidelines, § III(C)(5). We also require that the interpreter be identified on the record by name, that the interpreter state whether he or she is certified, and that the interpreter indicate whether he or she understands the instructions. In addition to instructing the interpreter, the trial court must also give an instruction to the jury about the interpreter's role during deliberations. Until we approve modified instructions, Appendix A to this opinion contains the pre-deliberation oath for the interpreter and Appendix B contains the jury instructions that trial courts should use effective immediately.

{34} After deliberations, but before the verdict is announced, the trial court is required to ask the interpreter on the record whether he or she abided by the oath not to participate in deliberations. The interpreter's response must be made part of the record. Furthermore, at the request of any party, the trial court must allow jurors to be questioned to the same effect. Finally, the trial judge must also instruct the interpreter not to reveal any part of the jury deliberations until after the case is closed. *See id.* § III(C)(6).

{35} In borrowing some of these requirements from the NES Guidelines, we recognize the considerations that were taken into account by the Administrative Office of the Courts when it recommended that this Court not make the Guidelines mandatory. These considerations included the "unique needs and limitations" of local courts, and the fact that some guidelines "may not be applicable in all courts." *Id.* § I. While some of the NES Guidelines may not be appropriate for all courts, the suggestions that we adopt today as mandatory are universally applicable in a case involving an interpreter for a non-English speaking juror. All trial courts are charged with the duty of protecting a defendant's right to a fair and impartial trial, as well as protecting the right of a non-English speaking juror to fully participate in judicial proceedings. We believe the requirements we have adopted strike a balance between the competing constitutional rights at stake in this case. The requirements take into account the need for interpreters during jury deliberations as required by Article VII, Section 3, while also emphasizing the strictly limited role of the interpreter to ensure a defendant's due process rights are adequately protected.[1]

---

1. The procedures for balancing due process requirements with the constitutional mandate that non-English speaking citizens not be systemat-

ically excluded from participating in our jury system has been dynamic and evolving. One example of this is the adoption of the Court

## III. CONCLUSION

{36} The Court of Appeals is reversed. In accordance with our decision today, we refer this matter to our Uniform Jury Instructions committees for immediate action consistent with this opinion. Until final instructions are developed and adopted by this Court for use in cases involving interpreters for non-English speaking jurors, a provisional oath for interpreters and instructions to the jury are attached to this opinion as appendices for immediate use by trial courts. Defendant raised four other issues in his original appeal which were not addressed by the Court of Appeals. We remand to the Court of Appeals for consideration of those remaining issues.

{37} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.

## APPENDIX A

### Pre–Deliberation Oath to Interpreter

"Do you solemnly swear or affirm that you will not interfere with the jury's deliberations in any way by expressing any ideas, opinions, or observations that you may have during deliberations, and that you will strictly limit your role during deliberations to interpreting?"

## APPENDIX B

### Pre–Deliberation Instruction to Jury

Ladies and gentlemen, we have at least one non-English speaking juror who is participating in this case. The New Mexico Constitution permits all citizens to serve on a jury whether or not English is their first language. You should include this [these] juror(s) in all deliberations and discussions on the case. To help you communicate, the juror(s) will be using the services of the official court interpreter. The following rules govern the conduct of the interpreter and the jury:

1) The interpreter's only function in the jury room is to interpret between English and [the non-English speaking juror(s) native language].

2) The interpreter is not allowed to answer questions, express opinions, have direct conversations with other jurors or participate in your deliberations.

3) The interpreter is only allowed to speak directly to a member of the jury to ensure that the interpreter's equipment is functioning properly or to advise the jury foreperson if a specific interpreting problem arises that is not related to the factual or legal issues in the case.

4) No gesture, expression, sound or movement made by the interpreter in the jury room should influence your opinion or indicate how you should vote.

5) If you can speak both English and [the language of the non-English speaker], we ask that you speak only in English in the jury room so the rest of the jury is not excluded from any conversation.

6) Leave all interpretations to the official court interpreter [who is trained and certified by the court]. The interpreter should be the only one to interpret conversations inside the jury room and testimony in the courtroom.

7) Any deviation from these rules should be immediately reported by submitting a note identifying the problem to the judge or court personnel.

### DIRECTIONS FOR USE

This instruction should be read before deliberations whenever a non-English speaking juror is serving on the jury.

Interpreters Code of Professional Responsibility. *See* Rule 23–111(C) NMRA. The Code was not in place at the time of Defendant's trial. However, since this Court's adoption of the Code in 2004, all certified court interpreters are required to sign a statement indicating that "as officers of the court, court interpreters are bound to [the] professional code of ethics to ensure due process of law." Rule 23–111(C)(A). One requirement under the Code that is particularly relevant to future cases involving an interpreter for a non-English speaking juror is that "[t]he interpreter shall confine himself or herself to the role of interpreting." Rule 23–111(C)(C)(4).

**APPENDIX C**

**Supreme Court of New Mexico**

Administrative Office of the Courts

John M. Greacen, Director

237 Don Gaspar–Room 25

Santa Fe, NM 87501–2178

(505) 827–4800

(505) 827–4824(fax)

aocjmg@nmcourts.com

**Administrative Office of the Courts**

**Non–English Speaking Juror Guidelines**

**I.   INTRODUCTION**

**II.   NON–ENGLISH SPEAKING JUROR ASSISTANCE SERVICES**
  A.  Scope
  B.  Court Interpreters
  C.  Jury Summons
  D.  Juror Questionnaire
  E.  Jury Handbook and Orientation
  F.  Jury Selection
  G.  Trial Proceedings
  H.  Jury Deliberations

**III.   COURT INTERPRETATION STANDARDS**
  A.  Certification and Availability Standards
    1.  Certified
    2.  Uncertified
    3.  Availability
  B.  Written Translation Standards
    1.  Qualification and Orientation Materials
    2.  Trial Materials
    3.  Machine Translation
  C.  Use and Performance Standards
    1.  Hours of Service
    2.  Oath of Interpreter
    3.  Pre–Interpretation Interview
    4.  Courtroom Explanation of the Role of the Interpreter
    5.  Pre-Deliberation Instructions
    6.  Post-Deliberation Instructions
    7.  Equipment

**IV.   COURT INTERPRETATION COSTS**
  A.  Jury and Witness Fee Fund
  B.  Interpreters in Civil Cases
  C.  Interpreter Compensation

**V.   COURT INTERPRETER RECRUITMENT AND TRAINING**
  A.  Administration
  B.  Special Training

## I.   INTRODUCTION

These guidelines are intended to assist in the efforts of the New Mexico Judiciary to incorporate non-English speaking (NES) citizens into New Mexico's jury system. Because each local court has unique needs and limitations, these guidelines may not be applicable in all courts. Accordingly, these guidelines should not be considered mandatory directives that must be followed in all cases. However, all courts are encouraged to implement the standards set forth below to the fullest extent possible.

## II.   NON–ENGLISH SPEAKING JUROR ASSISTANCE SERVICES

### A.  Scope

Article VII, Section 3, of the New Mexico Constitution provides that "[t]he right of any citizen of the state to … sit upon juries, shall never be restricted, abridged or im-

paired on account of . . . inability to speak, read or write the English or Spanish languages." To comply with this constitutional mandate, all courts should strive to incorporate all New Mexico citizens into our jury system regardless of the language spoken by a prospective NES juror. Because most potential NES jurors speak Spanish as their primary language, these guidelines seek to implement statewide standards for accommodating prospective jurors who speak Spanish. However, where financially and logistically possible, all courts are encouraged to implement these guidelines for other languages.

## B. Court Interpreters

Upon request by an NES citizen called for jury duty, all courts should appoint a court interpreter to assist the NES juror or prospective juror. In the absence of a specific request for a court interpreter, all courts should independently determine whether a juror or prospective juror is in need of a court interpreter. To make this determination, a court may consider conducting a limited interview of the juror or prospective juror to assess whether the juror or prospective juror is capable of understanding the proceedings in English.

## C. Jury Summons

The New Mexico jury summons form should include a statement in Spanish notifying citizens called for jury duty that assistance is available for those who cannot understand English. The Spanish notice should also provide a telephone number that prospective NES jurors may call for further assistance. The Administrative Office of the Courts (AOC) is responsible for producing jury summonses for local courts that will include an appropriate Spanish notice. The AOC will coordinate with local courts to ensure that an adequate number of trained court personnel are available to respond to calls for assistance from prospective NES jurors.

## D. Juror Questionnaire

The AOC is responsible for preparing a Spanish version of the juror questionnaire used by local courts. The AOC is also responsible for distributing copies of the Spanish version of the juror questionnaire to all local courts. All local courts should provide a Spanish version of the juror questionnaire upon request from any prospective juror. All local courts should also make arrangements to have court personnel available to provide an oral, Spanish translation of the juror questionnaire and to otherwise assist prospective NES jurors who cannot read Spanish.

## E. Juror Orientation Materials

The AOC is responsible for distributing to all local courts copies of the Spanish version of jury orientation materials approved by the Supreme Court. To the extent that local courts may provide English language jury orientation materials to prospective jurors, those courts should also make arrangements to provide oral, Spanish translations when needed. Alternatively, courts are encouraged to produce written translations of juror orientation materials.

## F. Jury Selection

All courts should make arrangements to have a court interpreter available for prospective NES jurors during the jury selection process. Upon arriving for jury selection, the court should introduce the court interpreter appointed to assist prospective NES jurors and advise prospective NES jurors that they should alert the interpreter if they have any questions during the process. The transcript of proceedings need not include the foreign language statements of the court interpreter or prospective NES juror, provided that the transcript clearly indicates when a court interpreter was used to interpret for a prospective NES juror.

Although a court interpreter may provide interpretation services for more than one prospective NES juror at a time, a court interpreter ordinarily should not be used to interpret for both a litigant and a prospective NES juror. However, when the litigant and his or her attorney can communicate in the same non-English language for confidential communications, the court interpreter may be used to otherwise interpret for both the

litigant and the prospective NES juror. Subject to availability, courts are encouraged to avoid using the same court interpreter for jury selection and trial in the same case.

Prospective NES jurors are subject to peremptory challenges and challenges for cause the same as any other prospective juror. However, a prospective NES juror may not be challenged or excused simply because that juror is unable to read, write, or speak the English language. Moreover, the trial court should not excuse a prospective NES juror who asks to be excused simply because he or she cannot read, write, or speak the English language. Exercising its discretion in ruling on an objection to the service of any NES citizen, the court should consider all facts and circumstances pertaining to service by this juror, as the court would do in ruling on an objection to service by any citizen. In the event that a court interpreter will not be available to provide interpretation services for a prospective NES juror who would otherwise be selected to serve on the jury, the presiding judge may either postpone the proceedings until a court interpreter is available or excuse the juror from service for that proceeding only, provided that the prospective NES juror is recalled for jury selection for the next scheduled proceeding. If an interpreter cannot be obtained after reasonable effort, the prospective NES juror may be excused permanently.

## G. Trial Proceedings

All courts should make arrangements to have a court interpreter available for all NES jurors during all trial proceedings. The transcript of proceedings need not include the foreign language statements of the court interpreter or the NES juror, provided that the transcript clearly indicates when a court interpreter was used to interpret for an NES juror. Although a court interpreter may provide interpretation services for more than one NES juror, a court interpreter ordinarily may not provide interpretation services for both a litigant and an NES juror or for a witness and an NES juror. However, when the litigant and his or her attorney can communicate in the same non-English language for confidential communications, the court interpreter may be used to otherwise interpret for the litigants, witnesses, other court participants, and NES jurors. Subject to availability, courts are encouraged to avoid using the same court interpreter for the trial and for jury deliberations.

## H. Jury Deliberations

All courts should make arrangements to have a court interpreter available for all NES jurors during all jury deliberations. One court interpreter may provide interpretation services for more than one NES juror at a time during deliberations. To the extent that documentary exhibits are submitted to the jury for consideration during deliberations, the court interpreter assigned to assist NES jurors may provide an oral translation of the written material. With respect to jury instructions submitted to the jury, courts are encouraged to draft written, Spanish translations of the jury instructions with the assistance of a court interpreter. Alternatively, the court interpreter assigned to assist NES jurors during deliberations may provide an oral translation of the jury instructions.

## III. Court Interpretation Standards for NES Jurors

When providing the court interpretation services to NES jurors and prospective jurors as outlined above, all courts should strive to meet the following standards:

## A. Certification and Availability Standards

### 1. Certified

All courts should use certified court interpreters to assist NES jurors during all jury selection, trial, and deliberation proceedings. Certification is governed by the provisions of the Court Interpreters Act, NMSA 1978, §§ 38–10–1 to –8 (1985), as administered by the AOC. Except as otherwise provided below, an uncertified court interpreter should only be used if the requirements of NMSA 1978, Section 38–10–3(B) (1985), are met. In the event that a court must use an uncertified court interpreter, the court should consider briefly examining the uncertified court

interpreter to establish the qualifications of the interpreter.

### 2. Uncertified

All courts may use uncertified court interpreters to assist NES jurors and prospective jurors in completing the juror questionnaire. Uncertified court interpreters may also be used during the jury orientation process.

### 3. Availability

All courts should maintain a list of locally available certified and uncertified court interpreters and submit an updated copy of that list to the AOC by May 1st of each year. For those courts that do not have an adequate number of locally available certified or uncertified court interpreters available to assist NES jurors and prospective jurors, the local court administrator or chief judge should coordinate with the AOC to compile a list of certified and uncertified court interpreters who are available from other areas. The AOC should also assist local courts in the training of local court personnel to assist NES jurors and prospective jurors with the juror questionnaire, jury orientation, and with questions arising outside the context of formal court proceedings.

## B. Written Translation Standards

### 1. Qualification Materials

The AOC will provide all courts with a written, Spanish translation of the juror qualification form and questionnaire translated by a certified court interpreter.

### 2. Trial Materials

Written materials that are submitted to the jury for consideration during trial or jury deliberations should be orally translated by a certified court interpreter or translated in writing by a certified court interpreter. If a certified court interpreter is not available, the court may use an uncertified court interpreter to orally translate written materials if the requirements of Section 38–10–3(B) are met.

### 3. Machine Translation

A number of services are available on the Internet and elsewhere that provide free or low-cost translation of written materials from English into a number of other languages. Because machine translation may not be accurate, courts should not use machine translation for written materials that are to be used in formal court proceedings, such as jury instructions or documentary exhibits. Although courts may consider using machine translation for other informational and local orientation materials submitted to jurors and prospective jurors, all courts are cautioned against relying exclusively on machine translation without human verification of the accuracy of a machine translation.

## C. Use and Performance Standards

Because of the demanding and sensitive nature of the services provided by court interpreters appointed to assist NES jurors and prospective jurors, all courts are encouraged to use and instruct court interpreters in accordance with the following standards.

### 1. Hours of Service

All courts should strive to limit the amount of time that a court interpreter interprets for an NES juror or prospective juror to avoid court interpreter fatigue. Ideally, two court interpreters should be used as a team to provide interpretation services, and each interpreter should avoid interpreting for more than 30–45 minutes without a rest period. Because this may not be logistically feasible in all circumstances, every court should remain sensitive to the risk of court interpreter fatigue. Whenever a court interpreter suspects that the quality of interpretation may become compromised because of fatigue, the interpreter should advise the trial court judge of the need for a period of rest.

### 2. Oath of Interpreter

Before a court interpreter begins to provide interpretation services for an NES juror or prospective juror during jury selection or trial, the trial judge should administer an oath to the court interpreter in accordance with NMSA 1978, Section 38–10–8 (1985).

### 3. Pre–Interpretation Interview

Prior to providing interpretation services for an NES juror or prospective juror, with the knowledge and permission of the court, the court interpreter should briefly interview the NES juror or prospective juror to enhance the effectiveness of the interpretation by becoming familiar with the speech patterns and linguistic traits of the NES juror or prospective juror.

### 4. Courtroom Explanation of the Role of the Interpreter

Prior to the commencement of proceedings, the trial court judge should explain the role of the court interpreter to those present in the courtroom by explaining that the interpreter was appointed by the court to assist jurors or prospective jurors who do not understand English. The judge should also explain to the jury that the interpreter is only allowed to interpret and that the jurors may not ask the interpreter for advice or other assistance. The judge should also explain that, for those English speaking jurors who may understand the non-English language spoken by the court interpreter, the jurors should disregard what they hear the interpreter say and rely solely on the evidence presented in English.

### 5. Pre–Deliberation Instructions

Prior to excusing the jury for deliberations, the trial judge should, on the record in the presence of the jury, instruct the court interpreter who will be providing interpretation services for an NES juror that the interpreter should not interfere with deliberations in any way by expressing any ideas, opinions, or observations that the interpreter may have during deliberations but should be strictly limited to interpreting the jury deliberations. The trial judge should also ask the court interpreter to affirmatively state on the record that the interpreter understands the trial judge's instructions.

### 6. Post–Deliberation Instructions

Following jury deliberations but before the jury's verdict is announced, the trial judge should ask the court interpreter on the record whether the interpreter abided by his or her oath to act strictly as an interpreter and not to participate in the deliberations. The interpreter's identity and answers should be made a part of the record. At the request of a party to the litigation, the jurors may also be questioned to the same effect. The trial judge should also instruct the court interpreter not to reveal any aspect of the jury deliberations after the case is closed.

### 7. Equipment

With the assistance of the AOC, all courts should make arrangements to provide equipment for use by a court interpreter who will be providing interpretation services for NES jurors. The AOC will develop standards and seek funding to acquire adequate equipment for use by court interpreters throughout the state who will be providing interpretation services for NES jurors and prospective jurors. The equipment should allow interpreters to provide interpretation services for multiple persons with minimum disruption of the court proceedings.

To the extent that the AOC and local courts are unable to provide court interpreters with interpretation equipment, all court [personnel] should assist court interpreters with the logistical arrangements for providing interpretation services whenever possible. Accordingly, prior to jury selection or trial proceedings, court personnel should identify the number of NES jurors or prospective jurors scheduled to appear in court. This information should be provided to the appointed court interpreter so that the interpreter can make arrangements for the appropriate equipment and seating arrangements. The interpreter should obtain the prior approval of the trial court if special equipment and seating arrangements are needed. The bailiff should inform counsel if any seating changes have been made to accommodate NES jurors or prospective jurors.

## IV. COURT INTERPRETATION COSTS

### A. Jury and Witness Fee Fund

All costs associated with administering these guidelines and providing services for

NES jurors and prospective jurors should be paid from the Jury and Witness Fee Fund. To the extent that such costs are initially incurred at the local court level, local courts may seek reimbursement from the Jury and Witness Fee Fund.

### B. Interpreters in Civil Cases

The costs for a court interpreter to provide interpretation services to an NES juror or prospective juror in civil cases should be paid by the court through the Jury and Witness Fee Fund.

### C. Interpreter Compensation

Court interpreters appointed to provide interpretation services for NES jurors or prospective jurors should be paid at a fixed rate in accordance with the approved fee schedule established by the AOC. However, all courts are free to employ a certified interpreter on a full-time basis or under contract at a mutually agreed upon compensation rate.

### V. COURT INTERPRETER RECRUITMENT AND TRAINING

### A. Administration

The AOC is be responsible for the recruitment and training of court interpreters to provide interpretation services for NES jurors and prospective jurors. Consistent with the New Mexico Judicial Branch Personnel Rules, local court personnel are encouraged to train for and become certified as court interpreters.

### B. Special Training

The AOC, in consultation with the Court Interpreters Advisory Committee, *see* NMSA 1978, § 38–10–4 (1985), will develop supplemental training standards for court interpreters who will provide interpretation services for NES jurors and prospective jurors. These standards should be incorporated into the general certification process for all new court interpreters.

**EFFECTIVE DATE:**

Guidelines are effective November 15, 2000

John M. Greacen
Director, Administrative
Office of the Courts

Date