# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: February 3, 2016

**NO. 33,837**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CAESAR ORTIZ-CASTILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

{1}    This appeal arises from a jury trial in which Defendant Caesar Ortiz-Castillo was convicted of trafficking controlled substances, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant originally appealed three issues, two of which we addressed in a memorandum opinion that affirmed Defendant's convictions. *State v. Ortiz-Castillo*, No. 33,837, mem. op. (N.M. Ct. App. Feb. 3, 2016) (non-precedential).

{2}    The final issue on appeal relates to Defendant's claim that the district court's failure to provide Spanish translations of written jury instructions to a Spanish-speaking juror violated that juror's constitutional right to fully participate in the trial. Because we conclude that the accommodations made by the district court were sufficient to avoid any impairment to the ability of a Spanish-speaking juror to fully participate, we affirm.

**BACKGROUND**

{3}    The jury panel convened for Defendant's criminal trial included individuals for whom Spanish was their primary language. One of these individuals was ultimately selected to serve on the jury and required interpretative services throughout the trial.

Defendant's request that the Spanish-speaking juror be provided written jury instructions in Spanish was denied, but the district court noted that an interpreter would be present during deliberations and could translate the jury instructions as needed. Defendant appealed the district court's refusal to provide written translations of the jury instructions into Spanish.

**PRESERVATION**

{4}    Defendant argued both at trial and in his appellate briefing that the district court's failure to provide Spanish-language translations of written jury instructions could compromise the Spanish-speaking juror's ability to fully participate in the deliberative process. Our appellate courts have held that criminal defendants have standing to assert the rights of jurors to be free from discriminatory exclusion, a premise that extends to the deliberative process. *See State v. Rico*, 2002-NMSC-022, ¶ 6, 132 N.M. 570, 52 P.3d 942 ("In [*State v. Singleton*, 2001-NMCA-054, 130 N.M. 583, 28 P.3d 1124], the Court of Appeals held that a defendant has standing to protect the Article VII, Section 3 rights of an excluded juror. This result is correct." (citation omitted)).

**STANDARD OF REVIEW**

{5}    Defendant's argument that Spanish-speaking jurors are entitled to written translations of jury instructions is premised upon language found in the New Mexico

Constitution. *See* N.M. Const. art. VII, § 3. We review questions of constitutional law de novo. *State v. DeGraff*, 2006-NMSC-011, ¶ 6, 139 N.M. 211, 131 P.3d 61.

**WRITTEN JURY INSTRUCTIONS FOR SPANISH-SPEAKING JURORS**

{6}    Defendant argues on appeal that the New Mexico Constitution requires that written translations of jury instructions be provided to Spanish-speaking jurors. The New Mexico Constitution provides, in pertinent part, that "[t]he right of any citizen of the state to vote, hold office or sit upon juries, shall never be restricted, abridged or impaired on account of religion, race, language or color, or inability to speak, read or write the English or Spanish languages[.]" N.M. Const. art. VII, § 3.[1] As additional support for his argument, Defendant notes that our Supreme Court, discussing Article VII, Section 3 in *Rico*, stated that "[i]t is an unusual constitutional provision and . . . will not always be convenient to implement. The judicial branch of government will need the resources to make full implementation a reality." 2002-NMSC-022, ¶ 7.

---

[1]While only the English and Spanish languages are afforded inherent status under Article VII, Section 3, our Supreme Court has indicated that the constitutional principles and protections apply to persons who speak other languages. *See Rico*, 2002-NMSC-022, ¶ 3 ("Since the basis of our order was Article VII, Section 3, we see no reason why its principles . . . should not protect speakers of the Navajo language.").

{7} Our Supreme Court recently spoke to whether jury instructions must be provided in languages other than English in Order No. 00-8500, which adopted the Non-English Speaking Juror Guidelines (NES Guidelines) drafted by the Committee for the Improvement of Jury Service in New Mexico. *See* Supreme Court Order No. 00-8500 (Sept. 11, 2000). The NES Guidelines exist "to assist in the efforts of the New Mexico Judiciary to incorporate non-English speaking (NES) citizens into New Mexico's jury system." *State v. Pacheco*, 2007-NMSC-009, app. C § I, 141 N.M. 340, 155 P.3d 745. In contemplation of whether trial courts should provide written translations of jury instructions to NES jurors, the NES Guidelines state that "courts are encouraged to draft written, Spanish translations of the jury instructions with the assistance of a court interpreter. Alternatively, the court interpreter assigned to assist NES jurors during deliberations may provide an oral translation of the jury instructions." *Id.* § II(H). Given this language, it appears that our Supreme Court has considered the issue raised by Defendant and determined that the alternate accommodations outlined in the NES Guidelines are sufficient.

{8} Our analysis of Article VII, Section 3 leads to the same conclusion. The language of Article VII, Section 3 limits a government's ability to "restrict[], abridge[], or impair[]" a citizen's right to serve on a jury. N.M. Const. art. VII, § 3. The facts of this case implicate the potential for impairment of jury service as

4

opposed to the potential for restriction or abridgment. *Cf. Rico*, 2002-NMSC-022, ¶ 1 (holding that a trial court may not excuse a potential juror simply because the juror would need an interpreter to participate in the proceedings).

{9} Our central purpose in interpreting the constitution is to "reflect[] the drafters' intent." *State v. Lynch*, 2003-NMSC-020, ¶ 24, 134 N.M. 139, 74 P.3d 73. Principles of statutory construction "apply equally to constitutional construction." *State v. Boyse*, 2013-NMSC-024, ¶ 8, 303 P.3d 830 (internal quotation marks and citation omitted). As with legislative intent, to determine the intent of the drafters of our Constitution, "we first turn to the plain meaning of the words at issue, often using the dictionary for guidance." *Id.* ¶ 9. Under the plain meaning rule, we apply the ordinary meaning of the chosen language "unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction[.]" *State v. Maestas*, 2007-NMSC-001, ¶ 9, 140 N.M. 836, 149 P.3d 933 (internal quotation marks and citation omitted).

{10} Webster's International Dictionary variously defines the word "impair" as to "do harm to[,]" to "damage[,]" and to "lessen[.]" *Webster's Third New Int'l Dictionary*, 1131 (unabridged ed. 1993). Application of any of these definitions to the language of Article VII, Section 3 indicates that, to violate the New Mexico Constitution, a governmental entity must implement a system whereby the "inability

5

to speak, read or write the English or Spanish languages" somehow harms the ability of an individual to serve on a jury. N.M. Const. art. VII, § 3.

{11}     Defendant argues that the absence of a written translation of jury instructions impairs, or harms, the ability of a NES juror to fully participate in the deliberative process. In order to determine whether this is true, we must first establish the purpose of written jury instructions. The seminal case on this topic, *Kunz v. Nelson*, holds that the general purpose of written jury instructions is to assist the jury during deliberations. 76 P.2d 577, 584 (Utah 1938) ("The requirement to instruct in writing does not mean for the purposes of the record only, but for the purposes of use by the jury in the jury room[.]"). Our Supreme Court has advanced similar rationales for the use of written jury instructions in New Mexico. *See Territory v. Lopez*, 1884-NMSC-012, ¶ 10, 3 N.M. 156, 2 P. 364 ("[I]nstructions, under our statute, must be in writing, and should properly enunciate the law on the subject."); *State v. Greenlee*, 1928-NMSC-020, ¶ 27, 33 N.M. 449, 269 P. 331 ("Since 1880 it has evidently been the legislative policy that there should be an authoritative record to which the jurors might refer to avoid misapprehension or differences of opinion[.]"); *Hayes v. Hockenhull*, 1964-NMSC-087, ¶ 14, 74 N.M. 329, 393 P.2d 444 ("The purpose of instructing the jury is to make the issues that they are to determine plain and clear.").

{12}  Legal scholarship further clarifies that the purpose of written jury instructions relates directly to the ability of jurors to remember oral instructions once they have retired to the jury room. *See, e.g.*, Jeannine Turgeon and Elizabeth Francis, *Improving Pennsylvania's Justice System Through Jury System Innovations*, 18 Widener L.J. 419, 439 (2009) ("Empirical research confirms our intuitive notion that written instructions aid in the comprehension, retention, and application of the judge's instructions. . . . Research in cognitive psychology has amply demonstrated the benefits for comprehension and recall of both multiple exposure and written materials. Providing jurors with copies of written instructions increases juror understanding of the instructions, results in less confusion about applicable law, reduces questions about the instructions during the deliberations, reduces deliberation time, reduces disputes among jurors about the meaning and correct application of instructions, and increases jurors' confidence in the verdicts they reach." (footnotes omitted)); Elizabeth A. Tashash, Note, *Mandatory Provision of Written Copies of Jury Instructions to Retiring Juries in Criminal Trials in Massachusetts*, 19 Suffolk J. of Trial & App. Advoc. 414, 427-28 (2014) ("[T]he advantages of submitting written copies of [jury instructions] are clearly demonstrated by the empirical studies on juror comprehension of jury instructions. The simple visual aid of a written copy of the jury instructions for use in the deliberation room allows for a solution to the

study results that show that jurors cannot remember—let alone comprehend—instructions after hearing them only once. In addition, there is evidence that juries provided with a written copy of the jury instructions deliberate in more efficient and informed ways, and feel more confident about their decisions." (footnotes omitted)). There is no reason to believe that these findings would be less applicable to NES jurors.

{13} However, the question before this Court is not whether written jury instructions are beneficial, but it is instead whether the absence of written jury instructions would impair a NES juror's ability to fully participate given the facts of this case.

{14} New Mexico law provides that jurors are entitled to the same interpretative services during jury deliberations as they are during the trial itself. *See Pacheco*, 2007-NMSC-009, ¶ 2 ("[O]nce an interpreter has been given the mandatory interpreters' oath to interpret testimony correctly, an interpreter is authorized to be in the room during deliberations to assist non-English speaking jurors."). New Mexico law also defines "court interpreter" as "a person who provides interpretation or translation services for a case participant[,]" including jurors. Rule 1-103(A)(5) NMRA. "Translation" is defined as "the transmission of a written message from one language to another[.]" Rule 1-103(A)(4).

{15}     In the present case, three certified court interpreters were sworn prior to the beginning of the proceedings. Two of these interpreters accompanied the NES juror into the jury room to assist with the deliberative process.

{16}     If the purpose of written jury instructions is to limit the need for absolute recall memory of oral instructions given in the court room, we are unable to say that the presence of the interpreters in the jury room does not mitigate any potential impairment. Our rules of trial practice anticipate the need to translate written documents, including jury instructions, for NES jurors. Rule 1-103(E)(8). There is no reason to believe that one or both of the court interpreters present, who were qualified under Rule 1-103(E)(1)-(3), would be unable to do so in this, or any, case.

{17}     Defendant's reliance on *Rico* to argue that a trial court must provide written jury instructions, regardless of the procedural costs, is misplaced in this case. In addition to the language cited by Defendant, our Supreme Court in *Rico* also noted, "[t]he rights protected by Article VII, Section 3, like most constitutionally protected rights, are not absolute. There are circumstances in which a prospective juror's right to serve on a jury must be balanced against practical considerations[.]" *Rico*, 2002-NMSC-022, ¶ 10. The practical considerations in this case, obviously, are the resources necessary to translate jury instructions when a readily available accommodation exists within our current system of trial administration. Were data

9

available showing that jury instructions serve a purpose that cannot be resolved through translation by a court interpreter in the jury room, our analysis could differ. Because any potential prejudice to the juror is equally well resolved by written translations prior to deliberations, or oral or written translations as needed within the confines of the jury room, the juror's right to fully participate has not been impaired as that word is used in Article VII, Section 3 of the New Mexico Constitution.

{18}     In the absence of an impairment to a juror's constitutional right to fully participate in the deliberative process, we decline to mandate that trial courts provide written translations of jury instructions. This conclusion accords with the accommodations contemplated in the NES Guidelines that were implemented by order of our Supreme Court. *Pacheco*, 2007-NMSC-009, app. C § II(H). If the "unusual" wording set forth in Article VII, Section 3 of the New Mexico Constitution necessitates that written translations be provided to Spanish-speaking jurors in the absence of an impairment, that determination is properly left to our highest court. *Rico*, 2002-NMSC-022, ¶ 7.

10

**CONCLUSION**

{19}    Therefore, we affirm.

{20}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**